UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | * |
| FAITH NEWTON, | *   Criminal Action No. 21-cr-10035-ADB |
| | * |
| Defendant. | * |
| | * |
| | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

I.  **Introduction**

On April 21, 2023, Magistrate Judge Jennifer C. Boal entered an Order, [ECF No. 340], in which she revoked the detention order in this case and granted Defendant Faith Newton's motion for pretrial release on conditions. Judge Boal then stayed her release decision pending a ruling on the anticipated government appeal of her ruling. [Id. at 7]. The government appealed the order revoking the detention order on April 27, 2023, [ECF No. 342], and Newton opposed the government's appeal on April 28, 2023, [ECF No. 343]. Thereafter, Newton's counsel notified the Court that Newton had tested positive for tuberculosis. [ECF No. 344].

For the reasons explained below, the government's motion is <u>DENIED</u> and the matter is referred back to Judge Boal to set appropriate release conditions.

II.  **Relevant Factual and Procedural Background**

The factual and procedural background has been accurately described by Judge Boal, <u>see</u> [ECF No. 340 at 1-3], as well as by the parties in their respective filings relative to this appeal,

1

see [ECF Nos. 342 at 2-4, ECF No. 344], and they will not be recited again here, except as needed for clarity.

It is undisputed that Newton has been detained since her arrest on January 31, 2021. [ECF No. 342 at 2]. Her detention is based solely on risk of flight and there has been no suggestion that her release would pose a safety risk to herself or the community. See [id. at 2-3]. Further, in the time since her initial detention, the government has entered into a plea agreement with her co-defendant where the stipulated loss is up to $1.5 million, rather than the in excess of $100 million that the government has previously cited as a loss figure. See [ECF No. 340 at 5 (citing ECF No. 284 at 8)].

### III.  Discussion

Under the Bail Reform Act, upon a motion by the government, a defendant must be detained pretrial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the court considers the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). To warrant detention, the government must prove: (1) by a preponderance of the evidence that Newton poses a risk of flight, or (2) by clear and convincing evidence or that she is a danger to the community. See United States v. Patriarca, 948 F.2d 789, 792–93 (1st Cir. 1991); see also United States v. Debrum, No. 15-cr-10292, 2015 WL 6134359 at *4 (D. Mass. Oct. 19, 2015) (citing Patriarca, 948 F.2d at 792–93). District courts review challenges to a magistrate judge's pretrial detention order *de novo*. United States v. Marquez, 113 F. Supp. 2d 125, 127 (D. Mass. 2000) (citing United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990)); see also United States v. Rose, No. 11-cr-10062, 2012 WL 2500497, at *1 (D. Mass. June 26, 2012); United States v. Hernandez, No. 14-cr-10367, 2015 WL 4448094, at *2 (D. Mass. July 20, 2015).

Here, given that Newton has been held based solely on risk of flight and not on danger to the community, this Court will consider only whether she poses a risk of flight and then, assuming that she does, whether sufficient conditions can be set to mitigate that risk. Further, given Judge Boal's analysis, see [ECF No. 340 at 3-7], this Court will also consider the due process implications of further detention.

After having carefully reviewed the record before Judge Boal as well as the transcripts of the hearings that she held on March 24 and March 29, 2023, the limits of due process and the new information concerning Newton's health, the Court finds that the government can no longer

3

sustain its burden of establishing, within the limits of the Constitution, that there are no conditions short of pretrial detention that would reasonably assure Newton's appearance.

In terms of the § 3142(g) factors that the Court must consider, as has been noted elsewhere, the charges in this case are serious, but they do not involve violence, terrorism, a minor victim, distribution of a controlled substance or a firearm, explosive or destructive device. Further, the large sum of money at issue in this case and the fact that those funds might be available to Newton to finance her flight have always supported detention and arguably still do. The Court, however, while acknowledging that the government is still pressing a high loss figure for Newton, also takes into account the fact that the government entered into a plea agreement with her co-defendant in which the stipulated loss was much lower. If the issue were an appropriate sentence, the government may well be able to differentiate between the two defendants and the Court passes no judgment on the respective roles of the two defendants, but for present purposes, the Court notes that the government seems to have at relaxed its view of the loss figure, at least as to the named co-defendant, and will give this some consideration in resolving the issue of continued detention.

As to the second factor, for present purposes, the Court assumes, without deciding given the impending trial, that the evidence against Newton is strong. And again, the Court does not find that her release would pose a danger to anyone in the community or to herself.

This leaves the third factor – the history and characteristics of Newton – and the constitutional due process issue. In terms of her personal situation and characteristics, there have been some changes that mitigate in favor of, but do not alone require, her release. For example, Newton's mental and physical health have deteriorated. [ECF No. 284 at 9]. This appears to be true regardless of whether or not she is ultimately found to have tuberculosis. Further, the plea

4

agreement entered into by her co-defendant seems to have convinced Newton that she is looking at a shorter sentence than initially suggested to her.  Although, again, not dispositive, her belief that the punishment that could follow a conviction would be less onerous arguably lessens her incentive to flee, particularly given that her family, including her children are in the United States and not Kenya which is where her suspected proceeds are thought to be.[1]  Finally, the reality is that even if she does flee and is therefore willing to undertake all of the hardships and challenges, the government will still have secured more than two years of incarceration which is not an insignificant amount of prison time in a white-collar case, particularly when measured against the likely sentence for the co-defendant based on the contours of the plea agreement.  This is not to suggest that Newton could not face more incarceration if convicted, including further punishment if she is unwise enough to flee, but just recognizes that, at this point, there is no circumstance under which her conduct will go unwholly unpunished.

      As to the due process concerns raised by her lengthy pretrial incarceration, in the interests of efficiency, rather than reiterating the analysis in Judge Boal's opinion, the Court adopts it in its entirety, including her findings as to the Zannino factors, U.S. v. Zannino, 798 F.2d 544 (1st Cir. 1986, and, specifically, that strict release conditions can assure Newton's presence at these proceedings.  See [ECF No. 340 at 3-7].  Most significantly, the delay in this case has been extreme.  The Court does not attribute the delay solely to either party, but that does not change the fact that a combination of actions on the part of both parties, along with some docket management issues, have prolonged this case and resulted in this very lengthy period of pretrial

---

[1] The Court notes that the government's repeated suggestion that Newton should be required to give an accounting would seemingly require her to compromise her Fifth Amendment right not to incriminate herself.  Although Newton could have disclosed her finances in support or her release motions, the Court does not fault her for not doing so in light of the pending charges and her intent to try the case.

detention. There are certainly cases where a longer period pretrial detention would not offend due process, for example where a defendant is charged with the type of crime identified in 18 U.S.C. § 3142(g)(1). Here, however, given the specifics of this case, including, inter alia, that Newton has no prior criminal record, is charged with a non-violent, financial crime, and has been held for more than two years in a pretrial facility, her continued detention runs afoul of due process. This, coupled with the fact that there are conditions that should assure her appearance, requires her release pending trial.

In sum, although there is no question that detention was warranted at the outset, changed circumstances, coupled with the length of the pretrial detention and the attendant due process issues, have altered that calculus such that the government can no longer meet its burden of demonstrating, by a preponderance of the evidence, that there is no condition or combination of conditions short of detention that would reasonably assure Newton's appearance at future proceedings. The Court also finds that, given the unique circumstances of this case, due process concerns alone now warrant her release pending trial.

## IV. Conclusion

For the foregoing reasons, the government's appeal of Judge Boal's order that revokes the prior detention order [ECF No. 342] is <u>DENIED</u>. The case is referred back to Judge Boal to set appropriate release conditions. Judge Boal has outlined her thoughts on release conditions in her Order and this Court agrees that strict conditions should be set given the financial resources that might be accessible to Newton and the incentive to flee given the possibility of a conviction and, in that event, further incarceration.

**SO ORDERED.**

Dated: May 15, 2023

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE
