1                        UNITED STATES DISTRICT COURT
                            DISTRICT OF MASSACHUSETTS
2

3

4    United States of America,     )
                    Plaintiff,     )
5                                  )
                                   )
6    vs.                           )     Case No. 21CR10035-ADB-1
                                   )
7                                  )
     Faith Newton,                 )
8                   Defendant.     )

9

10   BEFORE:  The Honorable Magistrate Judge Paul G. Levenson

11

12                          Bond Hearing

13

14

15                               United States District Court
                                 1 Courthouse Way
16                               Boston, Massachusetts
                                 May 17, 2023
17

18

19

20

21

22
                        Marianne Kusa-Ryll, RDR, CRR
23                         Official Court Reporter
                        United States District Court
24                       595 Main Street, Room 514A
                          Worcester, MA 01608-2093
25                    508-929-3399 justicehill@aol.com
                     Mechanical Steno - Transcript by Computer

1    APPEARANCES:

2    United States Attorney's Office
   David G. Tobin, Assistant United States Attorney
3    Rachel Y. Hemani, Assistant United States Attorney
   John Joseph Moakley United States Courthouse
4    1 Courthouse Way, Suite 9200
   Boston, Massachusetts 02210
5    on behalf of the Government

6    Donnelly, Conroy & Gelhaar, LLP
   George W. Vien, Esquire
7    Nathaniel R. B. Koslof, Esquire
   260 Franklin Street
8    Suite 1600
   Boston, Massachusetts 02110
9    on behalf of the Defendant

10

11

12

13

14

15

16

17

18

19

20

21             Proceedings recorded by sound recording
          and produced by computer-aided stenography
22

23

24

25

P R O C E E D I N G S

1

2          (Audio begins at 10:34:50 a.m.)

3          THE CLERK:  Good morning.  The United States District

4    Court for the District of Massachusetts is now in session, the

5    Honorable Paul G. Levenson presiding.

6          Today is May 17th, 2023, United States versus Faith

7    Newton, Docket No. 21-cr-10035.

8          Counsel, please identify yourself for the record.

9          MS. HEMANI:  Good morning, your Honor.  Rachel Hemani

10    for the United States.

11          THE COURT:  Good morning.

12          MR. TOBIN:  And David Tobin for the United States.

13          MR. VIEN:  Good morning, your Honor.  George Vien and

14    Nate Koslof for the defendant, Ms. Newton.

15          MR. KOSLOF:  Good morning, your Honor.

16          THE COURT:  Good morning.  So we're here, I think,

17    really as a preliminary to the proposed release of Ms. Newton.

18    Judge Boal asked me to check in with the parties.  Her plan is

19    to release Ms. Newton in accordance with Judge Burroughs'

20    ruling on Judge Boal's report and recom- -- actually,

21    Judge Boal's ruling and Judge Burroughs' affirmance of the

22    ruling that Ms. Newton is to be released, and the major purpose

23    is to make sure that we have a shared understanding of the

24    conditions that will be required to accomplish that release and

25    make sure that we've got the pieces in place so that we can go

1    forward with it.

2          As I see it, the major ingredients are home

3    incarceration with GPS monitoring, and that typically requires

4    a home visit from Probation to make sure that it's an

5    appropriate setting just for the mechanics of the GPS

6    monitoring.  So that will require coordination with Probation

7    and Pretrial Services.

8          Another piece is the surrender of all U.S. and

9    Canadian passports from Ms. Newton, but also for husband and

10    children.  So, again, making -- getting those assembled,

11    establishing to the government's satisfaction or one hopes the

12    parties can agree that these pieces are in place, but making

13    sure that they've been accomplished.

14          And then there's the matter of the secured bond with,

15    I believe, it's five separate properties listed in Docket

16    No. 324.  So getting the bonds in place for all of those will

17    require some advance preparation.

18          Are there additional terms that require sort of

19    advance preparation, as opposed to the kinds of terms that will

20    be part of Judge Boal's admonitions to the -- to the defendant

21    at time of release?

22          MS. HEMANI:  Your Honor, the government would also be

23    seeking an unsecured bond in the amount of about $13.96 million,

24    just the amount that we've traced being sent to Kenya that we

25    have not restrained.

1          THE COURT:  I see.  So in addition to the secured

2     portion, the idea would be that the unrestrained funds in Kenya

3     would be what's subject to -- at least arguably to potential

4     action based on an unsecured bond if there's a flight?

5          MS. HEMANI:  Correct.

6          THE COURT:  Is that the concept?

7          Mr. Vien, any problem with that?  The goal here is, I

8     think, belts and suspenders of all sorts in order to allow

9     Ms. Newton to be released.

10          MR. VIEN:  Your Honor, as far as unsecured bond, I

11     spoke to Ms. Hemani this morning and Mr. Tobin.  We don't have

12     any problem with unsecured bonds.

13          THE COURT:  Okay.

14          MR. VIEN:  We would sign it.  But our game plan,

15     obviously, it's the Court that decides, not the parties on

16     this.

17          THE COURT:  Uh-huh.

18          MR. VIEN:  But we're in agreement that -- and I have

19     spoken to Probation, that Ms. Newton could get out of custody

20     sooner rather than later, and meaning the next couple of days,

21     and we can have some time to put in all the -- all the other

22     parts in place, particularly the real estate, and I want to

23     understand exactly what the government -- we'll do whatever the

24     government wants us to do and the Court wants us to do, but

25     it's going to take time for that, so we're going to ask until a

1       week from Friday to have all of that in place, but we can take

2       care of a lot of the other stuff.  The passports and

3       identification documents, we could -- we could have to the

4       Court or to the government by this Friday.  And I've spoken to

5       the U.S. Probation Pretrial Services officer, and he just asked

6       that the type of GPS monitoring be left to the Probation

7       office --

8                   THE COURT:  Uh-huh.

9                   MR. VIEN:  -- so they put in whatever they have.  We

10      don't object to that.

11                  And as I understand it, there -- the Probation office

12      at least is -- doesn't object to Ms. Newton getting out either

13      even today or tomorrow and then coming in to the Probation

14      office and getting everything set up, and I think the Probation

15      Officer, who of course can speak for himself, also asked that

16      the -- that there be a warrant that would be held in abeyance

17      so that Ms. Newton once she's released would actually come in

18      to the Probation office and/or go home or whatever they direct.

19      We don't have any objection to that as well.

20                  Our -- our concern is not letting these things delay

21      her release too long, because she needs to line up a bunch of

22      medical appointments and start coming in to seeing us and

23      preparing for trial.  So I'm sorry for the long-winded

24      response.

25                  THE COURT:  No, no.  This is useful information.

1          MR. VIEN:  I hope so.

2          THE COURT:  Let me -- let me ask this.  What is the

3    government's position?  Is it -- is the real estate the only

4    longer tail or longer time requirement piece of this?

5          I'm -- I will confess to being reluctant to do a

6    release under circumstances where it has been so fraught and

7    there has been such focus on the particular conditions to be

8    imposed by Judge Boal.  I'm reluctant to do it myself to -- on

9    Friday if Judge Boal is available to do it on Monday, and I

10   understand that that's still time of somebody who's presumed

11   innocent behind bars, but I guess I want to hear the parties on

12   that.  It's not that I lack the authority, but my intention had

13   been to make sure all the pieces of the puzzle were in place.

14         My familiarity with the case comes from a review of

15   the docket, and Judge Boal and Judge Burroughs' decisions

16   reflect the need for, if you will, maximalist conditions to

17   mitigate the risk of flight, even though the due process

18   considerations do require release under these circumstances.

19         So what's the --

20         MR. TOBIN:  Your Honor.

21         THE COURT:  Yeah.  Go ahead.

22         MR. TOBIN:  I apologize.  I'm sorry.  Obviously, the

23   Court, Judge Burroughs particularly, has ordered the release of

24   the defendant, and we don't want to do anything that would

25   thwart the efforts or the intention of the Court.  So I do

1    understand that it does take some time with the clerk's office

2    for these properties owned by a third party to be put up, if

3    you will, as security for the defendant's appearance.  I'm

4    thinking -- but that takes a while, and I don't think anyone

5    wants to keep the defendant in for the duration of that.  So

6    perhaps we could do something as follows.  Could these

7    individuals, who will be putting up their properties, and as

8    Mr. Vien has indicated, they will need some time to execute the

9    deeds or whatever it is that they do with the clerk's office,

10   perhaps in the interim, you know, in the next day or two, they

11   could sign some sort of document pledging to do so, sort of a

12   secured bond, if you will, that can be replaced once their

13   properties are properly put up, if that's the right phrase.  I

14   don't -- I don't have a lot of experience in the using of

15   properties to secure someone's appearance, so I may be speaking

16   out of school here, but again we don't want to keep this

17   defendant in any longer than we have to given the order of the

18   Court.

19        But maybe we don't have to wait a week and a half for

20   those properties to be properly put up as collateral, if you

21   will.  Maybe there's something that can be done in the next day

22   or two, which can be supplanted by a week from Friday with the

23   actual documents.

24        THE COURT:  It sounds like you're talking about

25   essentially unsecured personal bonds as an interim measure

1    pending securing the bonds with property.

2         Mr. Vien --

3         MR. TOBIN:  Yes, these would be unsecured personal

4    bonds signed off by the property owners, and those would be

5    torn up, if you will, you know, next week when they're actually

6    posting the properties.

7         MR. VIEN:  Yes, your Honor, that would be agreeable to

8    us, and I -- I -- these are -- these are people with jobs and

9    families, but I would -- I would hope I could get at least some

10   of them in tomorrow to the Court or to the courthouse to sign

11   unsecured bonds or if they don't have to physically appear,

12   I -- I could turn that around more quickly and get them back to

13   the Court, I hope, by the close of business today.  If not the

14   close of business today, then by tomorrow.

15        But again, and I appreciate Mr. Tobin's concern for

16   allowing -- to get out as soon as possible and not waiting

17   until next week and certainly not the end of next week.  So I

18   understand the Court's concern about Judge Boal's thoughtful

19   analysis and all the work she has put into it and all of our

20   concerns, but given that we're not going to have everything in

21   place probably until a week from Friday, I would respectfully

22   ask that Ms. Newton be released tomorrow or on Friday.

23        THE COURT:  Okay.  And what I'm -- I'm hearing the

24   government interpose no objection to that; in other words, am I

25   correct in understanding that the government's view in light of

1    the rulings of the Court is that a release before the

2    secured -- the property securing the bonds are in place is

3    appropriate.  I just want to make -- make clear.

4          MR. TOBIN:  Yes, your Honor.

5          THE COURT:  Okay.

6          MR. TOBIN:  Under certain circumstances.

7          THE COURT:  Right.

8          MR. TOBIN:  I think before Ms. Newton is released her

9    passport, her family's passport has to be turned in.  The

10   necessary unsecured bond of approximately $14,900,000 has to be

11   signed and in place.  The house has to be examined so that it

12   is GPS-monitor capable and the house is appropriate, but I

13   suspect those will not be issues, and these individuals who

14   will be putting up their property, not later than next Friday,

15   will sign some sort of unsecured -- strike that -- some sort of

16   bond, personal bond, for her in the amount of the value of

17   their homes, which again will be supplanted with those

18   conditions, then the government would have no objection.

19         THE COURT:  Okay.  And what's the time frame for

20   getting the passports in hand and confirming that that base is

21   covered?  Is that a one-day job, Mr. Vien?

22         MR. VIEN:  Yes, your Honor.  I might even be able to

23   do that by the close of business at least regarding -- I'm not

24   sure about Ms. Newton's passport, if that's still at home, but

25   I know that her husband's passport and her children's passports

1   are available, and I -- I would hope I could -- I could bring

2   them to the U.S. Probation Office by the end of the day today.

3        THE COURT:  Okay.  And -- all right.  So -- and it

4   sounds like Probation can move quickly to confirm that this is

5   an appropriate location for GPS, and then it would be for

6   Probation to use -- it would be left to the judgment and

7   discretion of Probation to determine precisely what kind of

8   electronic monitoring to employ.

9        Am -- am I understanding that the parties, the

10  government is in agreement on that?

11       MR. TOBIN:  Well, yes, Probation knows best when it

12  comes to tracking individuals who are out so we wouldn't

13  interfere with that.

14       THE COURT:  Okay.  All right.  So --

15       MR. VIEN:  I have one final suggestion that might

16  expedite this --

17       THE COURT:  Uh-huh.

18       MR. VIEN:  -- or at least something that I'd ask the

19  Court to consider.  Drilling down on the individuals, we could

20  do property up as secured bond by the end of next week, maybe

21  at least the way I've seen it in the past, maybe it makes sense

22  if we have a hearing later this afternoon or tomorrow in which

23  those individuals are either present in court or -- or I

24  understand that can be difficult on short notice, or they

25  appear by some sort of Zoom or video link so that the Court can

1    explain to them what it is they're doing, what they'll be

2    signing, you know, before she could get out and what needs to

3    be done by, say, the end of next week with actually putting up

4    the property.  It's always good to have these individuals

5    before the Court to understand sort of what they're doing and

6    to what their requirements are.  At least that's how I've seen

7    it in the past.

8              THE COURT:  That makes sense to me again.

9              Mr. Vien, what's your view on the practicalities of

10   this?

11             MR. VIEN:  I'll have to confirm that.  I don't think

12   it's an unreasonable suggestion.  So I'll get to work on that,

13   and if we could -- if we could tentatively schedule that for

14   tomorrow, then I'll do my -- my best to make sure that at least

15   some of those people would be available to participate via

16   Zoom.

17             THE COURT:  Okay.  Allow me just a moment to check

18   calendar for tomorrow.

19             (Pause.)

20             THE COURT:  Ms. Dumoulin, what do we think about two

21   o'clock tomorrow afternoon?

22             (The clerk conferred with the Court.)

23             THE COURT:  So we would be bringing Ms. Newton in for

24   that hearing as well, the plan would be to --

25             MR. VIEN:  I'm sorry.

1          THE COURT:  Go ahead.

2          MR. VIEN:  I -- I think I'm supposed to stop talking

3    when the person in the black robe is talking, so.

4          THE COURT:  On the other hand, the information

5    available to me comes from the folks on the screen.  So keep

6    going, please.

7          MR. VIEN:  Okay.  Yes, if the -- as the Court knows,

8    and as the government knows, it's an onerous trip to bring

9    someone in from Wyatt.  If it's anticipated, and I know things

10   can change and things can go wrong that she would be released

11   tomorrow, then I would certainly ask Ms. Newton to be brought

12   in tomorrow with -- to have that taken care of.

13         THE COURT:  That's what I had in mind.  In other

14   words, there's plenty that can prove -- you know, logistics can

15   prove complicated.  I'm not guaranteeing it, but in

16   anticipation of the possibility that Ms. Newton could be

17   released tomorrow, we need to put in the order now to make that

18   happen.  And that's -- that would be the thinking on this would

19   be that while there is some risk of having to make the trip in

20   and back, if we don't have all the pieces of the puzzle put

21   together, if we do have things ready to go it would -- it would

22   make the release possible.

23         MR. VIEN:  Then --

24         MR. TOBIN:  Your Honor, David Tobin here.  We would

25   have no objection to that.  And this gives Mr. Vien the time

1    from today and then tomorrow until two o'clock to secure the

2    signatures of these third parties on their unsecured bond.

3            THE COURT:  I'm going to want to see them in court.

4            MR. TOBIN:  No, no, I understand that, but if some of

5    them are -- I don't know how they can sign a document --

6            THE COURT:  Right.

7            MR. TOBIN:  If they're in court, they can sign

8    documents.  They can't sign documents if they're calling in

9    from their house.

10           THE COURT:  No, I'm inviting them into court.  I would

11   expect them to physically appear.

12           MR. TOBIN:  Okay.  Thanks, Judge.

13           MR. VIEN:  The other thing I could do, your Honor,

14   if -- if -- I don't know what their schedules, they may have

15   family, they may have work things.  If I could get the

16   paperwork, the bonds from the Court, I could probably have them

17   signed by the people and deliver them to Court tomorrow, and

18   then they could confirm.  The ones who couldn't make it in can

19   confirm on video that that was their signature.

20           THE COURT:  I will permit that.  I am not an expert on

21   the mechanics of this.

22           Ms. Dumoulin, as a practical matter, will we be able

23   to provide the unsecured bonds to Mr. Vien and -- to Mr. Vien

24   and his colleagues can get those signed up today and tomorrow?

25           (The clerk conferred with the Court.)

1          THE COURT:  Yeah, so we would -- somebody would need

2     to physically pick them up, I believe, as far as the bonds.  We

3     can double check that.  There may be a printable document.  I

4     just don't know the answer to that.

5          MR. VIEN:  And, you know, I'll do my best to get

6     originals signed and originals back to you.

7          THE COURT:  All right.

8          MR. VIEN:  And maybe we can --

9          THE COURT:  We'll see how far you go, and it may be

10    that, you know, it's a matter of substituting some things by a

11    day later if -- you know, if we -- you know, if I have

12    confirmation by somebody under oath that they have signed the

13    original, and I have a copy in front of me, that may be

14    adequate.  But I don't want to commit ahead of time to what's

15    the minimum that will be acceptable, since minima have a way of

16    turning into maxima very quickly.

17          But I'd say the first assumption is that we will have

18    individuals here personally signing an original signed

19    documents; and if there are deviations from that, we'll

20    consider how material those deviations are.

21          All right.  So I just want to make sure we've

22    covered -- oh, I guess there had been discussion, and I don't

23    know what the nature of this is as far as communications with

24    the Kenyan consulate, whether it's possible to obtain any kind

25    of assurance or undertaking that I suppose would be at

1    defendant's request, but an acknowledgement that the Kenyan

2    consulate would not be issuing travel papers to Ms. Newton.  Is

3    that -- I gather there was prior discussion of that and I'm not

4    clear on the precise status of -- of those discussions.

5             Counsel, can you fill me in on this?

6             MS. HEMANI:  Your Honor, Rachel Hemani.

7             We -- there were discussions over two years ago about

8    having her execute something where she would agree to be

9    extradited, and I can only speak to -- at the time I spoke to

10   our office of international affairs, and that type of an

11   agreement, I think, means little to the government.  What

12   you're talking about specifically, I don't think we've

13   discussed --

14            THE COURT:  Okay.

15            MS. HEMANI:  -- and it makes more sense in terms of

16   not getting new travel documents.

17            THE COURT:  Yeah, I don't know the answer offhand.

18            Is -- is Ms. Newton a dual citizen?

19            MS. HEMANI:  She's not.  But I believe that you can

20   easily --

21            THE COURT:  There's a right of repatriation or right

22   of return in Kenya?  All right.

23            VOICE:  Going anywhere.

24            THE COURT:  I'm sorry.  I didn't -- I did not

25   understand.  Mr. Vien, I don't know whether --

1         VOICE:  No, I'm -- oh --

2         MR. VIEN:  I didn't hear, either, your Honor.

3         THE COURT:  Okay.

4         MR. VIEN:  But the -- the bottom line is whatever the

5    government wants us to sign regarding -- with the Kenya embassy

6    will sign.  I don't -- I don't know if it's -- you know, worth

7    the paper it's written on so to speak.  But we'll do whatever

8    the government wants as not to seek new travel documents or

9    telling -- promising the Kenyan embassy we won't seek them or

10   we don't want them.

11        THE COURT:  All right.  I will leave that -- it

12   sounds -- it sounds like this is a point that it had been

13   raised and not necessarily -- there's a pencil, but it hasn't

14   necessarily been sharpened.

15        So I'm going to leave that one alone.  Frankly, my own

16   belief in these matters is that incentives to flee and means to

17   flee are the major determinants, and both Judge Burrough's and

18   Judge Boal's decisions have raised questions about whether the

19   incentives to flee remain where they once were, and that is a

20   critical consideration, and that really is not a matter that

21   is -- the -- well, I will -- I will not finish that sentence,

22   and instead I'll just say that the other measures proposed,

23   bonds, surrender of passports, children's surrender of

24   passports and documents all supplement and reinforce what

25   fundamentally, I think, is a situation where, to put it more

1    crudely, than either Judge Boal or Judge Burroughs

2    would -- Ms. Newton already has a couple of years in the bank

3    against a prospective sentence that may be lower than at least

4    some initial projections might have suggested.  So that her

5    incentives to flee have changed, and obviously she has due

6    process rights as a person who's presumed innocent to be

7    released.

8            So I will leave it to the parties to try and get the

9    pieces to put together, and we'll see you tomorrow afternoon at

10   two o'clock.

11           Is there anything further we need to do right now?

12           MS. HEMANI:  Your Honor.

13           MR. TOBIN:  Oh, I'm sorry.

14           MS. HEMANI:  One point from the government is that we

15   still do not have a different view on the loss amount regarding

16   Ms. Newton compared to her codefendant and (indiscernible) --

17           THE COURT:  I understand that.

18           MS. HEMANI:  -- and so.

19           THE COURT:  I understand that and -- and I don't think

20   Judge Boal or Judge Burroughs has made any finding.  They have

21   simply noted that a point of comparison with a codefendant, who

22   may be very differently situated could potentially change

23   somebody's perception about their likely consequences if they

24   are ultimately convicted.  So that's -- I don't think you're at

25   any risk that anybody's going to take my views on the subject

1    into account at any further date.  So -- but I take your point.

2          MR. VIEN:  Your Honor, I just had one piece of

3    information to provide to the Court.  What happened is I -- I

4    think you're aware of, it was a while ago, some weeks ago,

5    Ms. Newton had a positive skin test for tuberculosis, which

6    means that she could have had -- if this test was accurate that

7    she could have had tuberculosis at any point in her life or it

8    could be active.  So the next step was to get her a chest

9    x-ray, which happened a couple of weeks ago, which would

10   confirm whether or not she had active tuberculosis.  We haven't

11   been able to get the results of that chest x-ray.

12         THE COURT:  Oh --

13         MR. VIEN:  Excuse me, your Honor.

14         THE COURT:  No, I'm sorry.  I had -- keep going.

15   I --

16         MR. VIEN:  Oh, so anyway, Ms. Newton's a nurse.  She

17   doesn't think she has tuberculosis.  What good is that.  You

18   know, I don't know if that means anything.  I don't think it

19   offers anything.  Maybe she should wear a mask if she comes

20   into court, people should be careful around her; however, I

21   just wanted to provide that information to the Court so the

22   Court was aware of it since it appears we're -- we are likely

23   to have an in-person hearing tomorrow.  That's all.

24         THE COURT:  All right.  And this is something I had

25   incomplete information on this.  I knew there had been a

1  positive skin test.  I had been under the impression that there

2  had been a subsequent negative test indicating no active

3  tuberculosis.  It sounds like instead we're in a situation

4  where there's no current suggestion of active tuberculosis, but

5  no definitive test either.

6          Is that what you're telling me, Mr. Vien?

7          THE CLERK:  Sorry.  The marshal did confirm that there

8  is no issue for tuberculosis.

9          MR. VIEN:  Oh, I'm glad they could, your Honor,

10  because I was unable to.  But that's great.  So we have an

11  answer now thanks to your clerk.

12          THE COURT:  Yeah.

13          MR. VIEN:  Thank you.

14          THE COURT:  Let's hope that the hearsay is accurate

15  here, but in any case, I will leave it to the marshals to

16  provide advice in the first place about whether masking makes

17  sense under these circumstances, but the information that was

18  provided to me was that there was no medical reason to prevent

19  bringing Ms. Newton into the courthouse.

20          MR. VIEN:  That -- that's great.  Thank you, your

21  Honor.

22          THE COURT:  All right.  Counsel for the government

23  anything further we need to address right now?

24          MS. HEMANI:  No, your Honor.

25          THE COURT:  And for the defense?

1          MR. VIEN:  No, your Honor.  Thank you.

2          THE COURT:  Okay.  I will see you -- we'll be in

3    recess, and I will see you tomorrow at two o'clock.

4          THE CLERK:  Thank you.  We're in recess.

5          (Audio recording ended at 11:03:56 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          <u>CERTIFICATE OF OFFICIAL REPORTER</u>

2

3          I, Marianne Kusa-Ryll, Registered Diplomate

4   Reporter and Certified Realtime Reporter, in and for the United

5   States District Court for the District of Massachusetts, do

6   hereby certify that the foregoing transcript is a true and

7   accurate transcription prepared to the best of my skill,

8   knowledge, and ability from the official audio-recorded

9   proceedings in the above-entitled matter.

10

11

12      <u>/s/ Marianne Kusa-Ryll</u>            <u>          05/25/23   </u>

13      Marianne Kusa-Ryll, RDR, CRR              Date

14      Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25