<pre>
  1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
  2

  3
                                        )
  4     UNITED STATES OF AMERICA,       )
                                        )
  5             Plaintiff,              )
                                        )   Criminal Action
  6     v.                              )   No. 1:21-cr-10035-ADB-1
                                        )   Pages 1 to 26
  7     FAITH NEWTON,                   )
                                        )
  8             Defendant.              )
                                        )
  9


 10


 11              BEFORE THE HONORABLE PAUL G. LEVENSON
                     UNITED STATES MAGISTRATE JUDGE
 12


 13                          BOND HEARING
                                Day 2
 14


 15                          May 18, 2023
                         (Digital Recording)
 16


 17          John J. Moakley United States Courthouse
                      One Courthouse Way
 18                Boston, Massachusetts 02210


 19


 20


 21


                          Linda Walsh, RPR, CRR
 22                       Official Court Reporter
             John J. Moakley United States Courthouse
 23                       One Courthouse Way
                     Boston, Massachusetts 02210
 24                      lwalshsteno@gmail.com


 25
</pre>

1    APPEARANCES:

2    On Behalf of the Government:

3        UNITED STATES ATTORNEY'S OFFICE
         By: AUSA Rachel Y. Hemani
4            AUSA David Tobin
             AUSA Carol E. Head
5        1 Courthouse Way, Suite 9200
         Boston, Massachusetts 02210
6        617-748-3510
         rachel.hemani@usdoj.gov

7

8    On Behalf of the Defendant:

9        DONNELLY, CONROY & GELHAAR, LLP
         By: George W. Vien, Esq.
10           Nathaniel Koslof, Esq.
         260 Franklin Street, Suite 1600
11       Boston, Massachusetts 02110
         617-720-2880
12       gwv@dcglaw.com

13

14

15

16

17

18

19

20            Proceedings recorded by sound recording and
                produced by computer-aided stenography.
21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2              (Recording begins at 2:16:33)
 3              THE CLERK:  All rise.
 4              Good afternoon.
 5              The United States District Court for the District of
 6    Massachusetts is now in session, the Honorable Paul G. Levenson
 7    presiding.
 8              You may be seated.
 9              Today is May 18th, 2023, the United States versus
10    Faith Newton, docket number 21-CR-10035.
11              Counsel, please identify yourself for the record.
12              MS. HEMANI:  Good afternoon, Your Honor.  Rachel
13    Hemani for the United States.
14              THE COURT:  Good afternoon.
15              MS. HEAD:  Good afternoon, Your Honor.  Carol Head for
16    the United States.
17              THE COURT:  Good afternoon.
18              MR. TOBIN:  David Tobin for the United States.  Good
19    afternoon, Your Honor.
20              THE COURT:  Good afternoon.
21              MR. VIEN:  Good afternoon, Your Honor.  George Vien
22    and Nate Koslof for the defendant, Ms. Newton, who is here in
23    court with us today.
24              MR. KOSLOF:  Good afternoon.
25              THE COURT:  Good afternoon.
```

1          So I believe at this point what remains is to review

2     terms and conditions for release for Ms. Newton, and I just --

3     there's a lot of different pieces to this, so -- and we're

4     going to be proceeding a little bit step-wise to make sure

09:18   5     we've got the various pieces in place.

6          So first order of business -- and the release will

7     include standard statutory provisions as well as special

8     conditions, and please listen carefully and make a note to

9     correct or interrupt as you see fit to make sure we're getting

09:18  10     this right and that there's a shared understanding on these.

11          Among the conditions, and some of these draw from

12     docket entry number 24 when conditions were first proposed in

13     writing, and if circumstances have changed, we need to know

14     that and reflect that.

09:19  15          But defendant is to reside with her husband and

16     children at 2 Woolsack Drive, Westford, Massachusetts.  She

17     will be subject to GPS monitoring and will be subject to 24/7

18     home confinement with the following exceptions:

19          Travel outside of the home will only be done with

09:19  20     notice to and preapproval of the Probation Office and will be

21     limited to travel for medical appointments, meetings with

22     counsel, and weekly attendance at her church, and Probation is

23     to be informed of the time and place of the worship services.

24          Any travel will be restricted to the District of

09:19  25     Massachusetts.  Defendant will surrender -- and I gather

1  previously surrendered or the Probation Office may have

2  defendant's passport; is that correct?

3          MR. VIEN:  Prior counsel, Your Honor.

4          THE COURT:  Prior counsel has it, okay.

09:20  5          MR. VIEN:  I've spoken to the Probation Office, and

6  I'll make arrangements to take custody of those.  And if the

7  Probation Office wants them, we'll submit them.

8          THE COURT:  Okay.  As well as any -- if the defendant

9  has any current or expired forms of Kenyan identification,

09:20  10  those too must be surrendered, and shall not apply for any new

11  passport.  Defendant's family, including her husband and

12  children, will also surrender their passports.  I note at the

13  time of the original proposing of these conditions there was an

14  outstanding application.  I'm assuming that currently there are

09:20  15  passports to surrender?

16          MR. VIEN:  Yes, Your Honor.  That was her husband's

17  passport.  He's received a new passport.  His passport, as well

18  as those of their children, have been surrendered to the

19  Probation Office.

09:21  20          THE COURT:  Thank you, Mr. Vien.

21          Defense counsel will send notice to the Kenyan

22  consulate in substantially the form that a draft was sent to me

23  today, which appeared essentially to be an update of the

24  proposal from a couple of years ago, only with a different

09:21  25  magistrate judge and different counsel, but I take it, assuming

1    we go forward with release today, counsel will send that to the

2    Kenyan embassy?

3         MR. VIEN:  Yes, Your Honor, as soon as we get back to

4    the office.

09:21  5         THE COURT:  Okay.  Thank you.

6         The defendant is going to need to execute a secured

7    appearance bond in the amount of $900,000, which will be fully

8    collateralized by the following five properties, all of which

9    are held by third parties who will each provide -- agree in

09:21 10    writing to this condition and will be posting those properties

11    as security, and they will be signing as sureties for the

12    defendant.

13         The properties in question are 18 Bodwell Avenue,

14    Lowell, Massachusetts; 18 Windsor Street, Lowell,

09:22 15    Massachusetts; 30 Angle Street, Lowell, Massachusetts; 11 Dean

16    Drive, Lowell, Massachusetts; and 17 Cassandra Lane, Nashua,

17    New Hampshire.  And I just want to confirm the United States is

18    satisfied with the security on these bonds at this point?

19         MS. HEMANI:  Yes, Your Honor.  Again, provided that

09:22 20    the people who are pledging them come in, and actually either

21    today or by Zoom, and understand that they -- that the

22    government could take these properties if she leaves.

23         THE COURT:  I will go through that in some detail, but

24    these are all people who will be putting their property

09:22 25    directly at risk in being sureties, so as in effect

1    backstopping the defendant on -- each of these individuals will

2    be putting their own property at risk in support of the

3    defendant's bond under which she is required to appear for all

4    required appearances in this court.

09:23  5    And in addition, I will be admonishing the defendant

6    as to all of the statutory conditions of release -- actually, I

7    will be -- I will be discussing some of them orally, and the

8    remainder will be in the written materials that the defendant

9    will be required to sign.

09:23 10    There was reference -- and perhaps counsel can

11    enlighten me on this.  There was reference in the original

12    submission by defense counsel, this was docket entry number 24,

13    I believe, to a -- an order -- an executed order of

14    extradition, and I don't know what that is or how that would

09:24 15    work, but is that part of this case at this point?

16    MR. VIEN:  I don't think so, Your Honor.  We've

17    discussed it with the government, and I don't think there's

18    any -- my understanding is that we both agree that there's no

19    utility to it.

09:24 20    THE COURT:  Okay.  All right.  Thank you.

21    And I'm going to ask Probation, does it make sense to

22    have a warrant in abeyance with respect to the GPS monitoring?

23    U.S. PROBATION:  Yes, Your Honor.  Thank you for

24    asking.

09:24 25    THE COURT:  Okay.  We will order a warrant to be held

1    in abeyance.  What that means, in simple terms, is that there

2    will be a warrant already signed for Ms. Newton's arrest.  If

3    there is any -- if the GPS monitor shows any violation of

4    conditions, I'm generally available by phone to swear out a

09:25  5    warrant as it is, but the idea is that the warrant is already

6    signed and ready to go so that there will be no delay in

7    effecting arrest if there is any violation of these conditions

8    of release.

9         So, Mr. Vien, perhaps you can walk me through the best

09:25 10    process for discussing -- identifying and discussing with each

11    surety what their responsibilities are now and what they will

12    be agreeing to.  As I understand it, they're going to be

13    signing as sureties today and then providing deeds to back up

14    the security for those bonds, but at a -- and promptly but not

09:25 15    something to be completed today.  Is that the basic plan?

16         MR. VIEN:  It's exactly accurate, Your Honor.  And I

17    believe they've already signed.  Two of the individuals are

18    here in court today regarding three of the properties.  The

19    other individuals may be on Zoom.  We tried to arrange it, but

09:26 20    I'm not sure if they're there.

21         THE COURT:  Okay.  I see a Zoom entry for -- and I may

22    not be pronouncing this right -- Mr. Njuguna.

23         MR. NJUGUNA:  Yes.

24         THE COURT:  Okay.  And for a Peninnah Muiruri.

09:26 25         MS. MUIRURI:  Yes.

1     THE COURT:  Okay.  And then I see two names that don't

2     have the names written next to them when I'm looking at Zoom

3     here.  So I see -- let's see.  One is Mr. Ngash; is that

4     correct?  You may be muted.  I didn't hear what you said.  I'm

09:27  5     still not hearing you.  I can see your face.

6          FROM THE GALLERY:  Are you asking me?

7          THE COURT:  No.  I was asking -- and I may not be

8     pronouncing the name correctly.  It's N-G-A-S-H.  I'm

9     pronouncing it Ngash, but that may not be the right way to say

09:27  10     it.

11          FROM THE GALLERY:  N-G-A, you say?

12          THE COURT:  Yes, N-G-A-S-H.

13          I can see you speaking, sir, but I cannot hear you.

14     Can you check and see if by any chance your device is muted?

09:28  15          MR. VIEN:  Your Honor, just for the record.  I've

16     checked.  I think that's Samuel Nganga, N-G-A-N-G-A, relating

17     to the 18 Windsor Street, Lowell property.

18          THE COURT:  Okay.  And now I've lost picture

19     altogether.  There are those of us who are very anxious to have

09:28  20     the declared emergency end so we could end our life with Zoom

21     but we're back to it here.  All right.  Any suggestions on how

22     best to proceed?  I'm inclined to begin with the people who are

23     here in the courtroom, and just to confirm that they understand

24     what they are undertaking and what their signatures mean.  Can

09:29  25     you identify who those people are?

1          MR. VIEN:  Yes, Your Honor.  First relates to the 18

2     Bodwell Avenue, Lowell property.  It's Ms. Newton's

3     sister-in-law, Beth -- and I'm sorry for butchering the name --

4     M-W-A-N-G-I, and she's in court with us today.  I could ask her

09:29  5     to stand up just so you can identify her, Your Honor.

6          THE COURT:  Yes, please.  And can you tell me how to

7     say your name correctly, please.

8          MS. MWANGI:  Mwangi.

9          THE COURT:  Mwangi?

09:29 10     MS. MWANGI:  Yes.

11          THE COURT:  Okay.  Thank you.

12          MR. VIEN:  And also relating to two properties, 30

13     Angle Street and 11 Dean Drive, we have Sammy.  And I'll let

14     him stand up and pronounce his last name for all of us, please.

09:30 15     MR. MWAURA:  Mwaura.

16          THE COURT:  Can you spell it for the record, please.

17          MR. MWAURA:  M-W-A-U-R-A.

18          THE COURT:  Okay, Mr. Mwaura.  And then -- okay.  So

19     that's -- we have Ms. Mwangi and Mr. Mwaura here in court.  Are

09:30 20     those the only two of the sureties that are in court, Mr. Vien?

21          MR. VIEN:  Yes.  Those are only sureties that are here

22     with us today.

23          THE COURT:  Okay.  And who are the other sureties

24     associated with 18 Windsor Street, Lowell, and 17 Cassandra

09:30 25     Lane, Nashua?

```
 1              MR. VIEN:  Regarding 18 Cassandra Lane, Nashua, is
 2    Michael, and I'll spell his last name, N-J-U-G-U-N-A.  And I
 3    believe you've identified him as one of the people who was on
 4    Zoom.
 5              THE COURT:  Yes.  And I'm going to go slowly simply
 6    because I'm taking some notes as we go, and I can't do that
 7    quickly.  So give me a moment here.
 8              MR. VIEN:  Your Honor, I hate being too informal.  I
 9    have a document with a little chart on it.
10              THE COURT:  That sounds like it might be helpful to
11    all of us.
12              MR. VIEN:  I don't have any copies.  I could certainly
13    hand it to you, and then you can take over --
14              THE COURT:  Ms. Dumoulin, can you make a copy here?
15    Why don't we do that.  That way we can all be looking at the
16    same thing.
17              MR. VIEN:  It's an internal email, but I don't think
18    anyone is going to do anything with our secret lawyer.  Just
19    the first page it's on.
20              There's some attorney/client stuff.  I'll just get rid
21    of the bottom of it.  It's just nothing.  It's just
22    (inaudible).
23              THE COURT:  We should get some scissors.
24              MR. VIEN:  I could take off the bottom part.
25              THE COURT:  No, I think we're good.  Okay.  So this is
```

09:30 (line 5)
09:31 (line 10)
09:31 (line 15)
09:32 (line 25)

indeed very helpful, Mr. Vien.  All right.  So we have Beth

Mwangi and Sammy Mwaura, and I see Ms. Muiruri.  Am I saying

that correctly or close?

MS. MUIRURI:  Yes, that's fine.

09:33  THE COURT:  Thank you, who is also associated with

Angle Street.  And I see Mr. Njuguna.

MR. NJUGUNA:  Njuguna.  Njuguna.  Silent N.  Silent N.

THE COURT:  Njuguna, okay.  Thank you.  All right.

Who is associated with 17 Cassandra Lane.

09:33  And so the only people who are not present, either by

Zoom or in person, would be Frances Mwangi and -- actually, is

Samuel Nganga present or Naomi Ndungu?

MR. VIEN:  He's on the Zoom.

THE COURT:  Is he on Zoom?

09:34  MR. VIEN:  He is on Zoom.  He may be the one with the

mute problem.

THE COURT:  Okay.  So I'm going to ask -- this is -- I

will entertain objections to the procedure, but at least to

move things along initially, so Mr. Nganga, can I get you to

09:34  just hold up a hand with a thumbs up if you are able to hear me

and understand what I'm saying.  We've lost signal altogether.

All right.  We're not even going to be able to do this by hand

signals.

All right.  Counsel, I guess my question is this:  We

09:34  have signatures from each of these individuals, Mr. Vien?

1      MR. VIEN:  Yes, Your Honor.

2      THE COURT:  Okay.  And ultimately we're going to need

3  to have signed deeds submitted.  Is the government prepared to

4  go forward on the undertaking today that within -- that based

09:35  5  on the fact -- I take it they are facsimile signatures that we

6  have thus far?

7      MR. VIEN:  No.  Actually, Your Honor has the original

8  signatures.

9      THE COURT:  Oh, we have wet signatures on all of

09:35 10  these?

11      MR. VIEN:  Yes, Your Honor.

12      THE COURT:  Okay.  Is the government prepared to

13  proceed on signatures, even though not all of the sureties are

14  in a position to hear or respond to my warnings?

09:35 15      MS. HEMANI:  Yes, Your Honor, as long as everything is

16  perfected and filed with the clerk's office --

17      THE COURT:  All right.

18      MS. HEMANI:  -- in the next several days.

19      THE COURT:  All right.  And we can discuss whether --

09:35 20  what an outer limit is on that.  I know that good intentions

21  and reality don't always align perfectly, and I don't want to

22  create a foot fault that's going to create a pointless default,

23  but I also want to make sure things get wrapped up promptly.

24  So what I'm going -- Mr. Vien, yes?

09:36 25      MR. VIEN:  I just had an idea, that as an initial date

we could have a week from tomorrow, and if somehow it becomes

Wednesday or Thursday and it looks unworkable, we'll file

something with the Court.

MS. HEMANI:  That's fine.

THE COURT:  I see what looked like a nod.  All right.

So the government is in agreement on that.  So I will order

next Friday as the deadline for perfecting the security

interests here.  And what I'm going to say to the sureties is

that the promise here is Ms. Newton's.  She is promising to the

Court that she will appear for all required proceedings.  She

is the first person who would owe the money on this bond.

But because she has strong ties to another country and

because there are allegations that she may also have money

available and opportunity or means to flee, the Court is

requiring security, meaning property.  This property is not

instead of her appearance.  This property is a guarantee that

says she will appear, and if she does not, the sureties face

immense personal losses of what I take to be their homes or of

real estate that they own, valuable property.

And in a sense what we are doing here is saying there

are people who know and care about the defendant who are

putting their property at risk on her behalf in order to

support her release pending trial.  And the risk you take is a

very real one, and I don't want there to be any

misunderstanding that if Ms. Newton were to violate her

1   conditions of release, you could lose everything you are

2   putting up.

3        And so I will -- I think, rather than ask for oral

4   assent, given that we don't have all of the people present, I'm

09:38  5   simply going to state as clearly as I can that your signature

6   on that bond as surety means you are putting yourselves at

7   immediate financial risk, and it means, Ms. Newton, that you

8   are putting all of these people at immediate and very

9   considerable financial risk if you were to fail to appear for

09:38 10   any of the proceedings in this case.

11        I'm going to ask counsel, do you have suggestions

12   about anything further that I can or should say in connection

13   with the sureties on this bond?

14        MS. HEMANI:  They have to execute certain documents.

09:39 15   I assume we haven't seen those.

16        THE COURT:  Right.

17        MS. HEMANI:  And they will be recorded against their

18   property, so that if they want to encumber that property, even

19   if she hasn't violated, they will likely not be able to do

09:39 20   that.

21        THE COURT:  That's a very helpful point, and I'm going

22   to repeat it just to make sure that it's clear.  The paperwork

23   that needs to be completed within the next week, these are

24   property deeds essentially, and they will be recorded in the

09:39 25   registry.  That means that if you were to seek another

1    mortgage, if you were to seek to try and sell the property,

2    those documents would show that the United States government is

3    ahead of you when it comes time to being able to sell or

4    mortgage that property.  So it is a very significant financial

09:39  5    undertaking that you are undertaking and that will be required

6    as part of the conditions for release for Ms. Newton.

7         With that, counsel, is there anything further you

8    think I need to say on this point?

9         MR. VIEN:  No, Your Honor.  I think that's very clear.

09:40 10         THE COURT:  Okay.  All right.  You may be seated.

11    Thank you.

12         In addition, I am going to require the defendant to

13    sign an unsecured appearance bond in the amount of -- I'm going

14    to need Ms. Dumoulin's help for the exact dollar amount.

09:40 15    $13,964,000.  An unsecured bond means we are not making you

16    bring the cash to court now.  But it means, again, that if

17    there's any default, the government in effect has a judgment

18    against you for that much money.  So that is the purpose of the

19    unsecured bond.

09:41 20         And then, Mr. Vien, is -- I know there have been some

21    health issues.  Is there any hardship in asking your client to

22    stand?

23         MR. VIEN:  No, Your Honor, there isn't.

24         THE COURT:  Okay.  Ms. Newton, I'm going to ask you to

09:41 25    stand.

So I need to advise you about some of the laws that affect you while you're on release.  And this is advice we give anyone who is released, but it's important that you know and understand each of these laws.

09:41    First of all, your conditions of release are not suggestions.  They are mandatory.  And if you violate any of your conditions of release, a judge can issue an arrest warrant, you could be jailed until trial or return to jail until trial, and you could also be prosecuted for contempt of

09:42    court.  That means apart from any sentence for the crime you're now charged with, violating your conditions of release could result in an additional prison term, a fine, or both.

Also, while you're on release, if you commit any federal or state crime, you could face more severe punishment

09:42    than you would for committing the same crime at any other time.  And again, any prison term for violating release terms by committing a state or federal crime is consecutive, meaning on top of any sentence you might receive in connection with the charges that are currently pending.

09:42    I also need to advise you that it's a crime to try to bribe, to influence, to intimidate, to threaten or retaliate against any witness, victim, informant, or anyone else who may have information about this case.  And if there's anything unclear about what you can say to whom, you have a very good

09:43    lawyer.  Ask your lawyer's advice.  This is not an area where

1    the Court gives leeway to people saying, well, we were just

2    talking about what happened or we were just discussing old

3    times.  Talk to your lawyer about this, and your lawyers will

4    be able to give you good advice about staying way away from

09:43    5    anything that could be construed as any attempt to influence

6    anyone who may have information about this case.

7         It's also a crime to try and obstruct justice or

8    threaten, intimidate, injure, or try to influence any juror or

9    any court officer.  That includes the probation officer who

09:43 10    will be supervising you.  And again, any prison term for

11    threats or obstruction would be on top of any other sentence

12    you might receive.

13         And finally, I need to advise you about a separate

14    offense, sometimes called bail jumping.  If you knowingly fail

09:44 15    to appear as required by your conditions of release or if you

16    fail to surrender for service of the sentence pursuant to a

17    court order, that's a separate criminal offense.  Punishments

18    for failure to appear can include a prison term up to ten

19    years, which, again, would be on top of any sentence you might

09:44 20    receive for any other offense.

21         I think I made the comment the other day that -- and I

22    know your lawyer has stated very carefully and advocated

23    forcefully on your behalf, that you've had almost two years

24    being held in conditions that are in many respects much harder

09:44 25    than most federal prison sentence conditions.  And in the

ordinary course -- I'm sure your lawyers will advise you, and

I'm not making any ruling for the Court, but in the ordinary

course those are applied towards any sentence that you might

ultimately receive.  All of that goes out the window if you

09:45  flee or fail to appear and you face additional charges and

additional time.

So I just want to be as clear as I possibly can that

these are conditions designed to make sure you stay and appear.

The goal here is to accomplish what your attorneys have set out

09:45  to do, which is to make sure that you are not detained pretrial

longer than would be consistent with the Due Process Clause of

our Constitution.

But you are subject to court order and the opportunity

to go into release status, to be able to meet with your

09:46  attorneys, as you are going to need to do as you prepare for

trial, I know is tremendously important to you.  Any failure to

comply with these conditions of release will jeopardize your

ability to stay out.  So you need to know and understand that.

Do you understand?

09:46  THE DEFENDANT:  Yes.

THE COURT:  Okay.  You may be seated.

I'm going to ask counsel, is there anything else we

need to do today?

MS. HEMANI:  Your Honor, the only thing I guess I

09:46  would like to put on the record, and you've already addressed

this, in terms of not having contact in any way with witnesses
that are on the government's witness list or on the defense
witness list, I mean, of course, unless she's meeting with her
counsel.

My understanding is that a number of those witnesses,
including her co-defendant, do attend the same church.  I would
just like the Court to sort of admonish the defendant not to
have any contact with those individuals.

THE COURT:  Okay.  Let me -- I think the point is well
taken.  There are a couple of different ways -- I take it
there's already a witness list, so we don't need to develop a
separate list; is that correct?

MS. HEMANI:  There is already a witness list, and
there are also individuals who have been identified to defense
as unindicted co-conspirators of the different counts.

THE COURT:  I see.  And I just want to make sure
with Mr. Vien, is there a clear understanding of who's included
on this list?  Because what I don't want is surprises.

MR. VIEN:  I think it's very clear, Your Honor, and
we've admonished the defendant that if she were to be released
she can't have any contact, directly or indirectly, with
anybody on the witness list or any of the named
co-conspirators, unindicted co-conspirators, except, of course,
her husband, who has been named as an unindicted
co-conspirator.

1          THE COURT:  Okay.  So I'm going to -- that fits with

2    the admonition about trying in any way to influence a witness,

3    and what I'm going to say is this:  It sounds like some of this

4    could be difficult as a practical matter, meaning you are going

09:48  5    to see people at church.  It's going to be a strange experience

6    not to look them in the eye or meet them or say hello to them.

7    Your lawyer will advise you on exactly what to do and how best

8    to do this.  I know from my own experience being in situations

9    where I can't speak to other people, it happens fairly often in

09:48  10    the courthouse where if one sees jurors, for example, you're

11    not allowed to talk to them.

12          My personal advice is do not -- simply don't make eye

13    contact and look away.  It may seem rude, but the alternative

14    is a misunderstanding.  And you can't afford a misunderstanding

09:49  15    about this.  So I will let your lawyer advise you about how

16    best to handle this issue, but I am alerting you that it will

17    be more difficult than it sounds to abide by this condition

18    because you do not want to be in a position where anyone is

19    questioning whether you had followed this condition.

09:49  20          Anything else, Counsel?

21          MS. HEMANI:  Probation can advise on this as well, but

22    we have had discussions regarding firearms -- surrendering

23    firearms that are in the house.

24          THE COURT:  Are there firearms in the house?

09:49  25          MR. VIEN:  Yes, Your Honor.  Her husband has some,

1  possesses some pistols legally, but we've already started

2  working with Probation and with her husband to get them out of

3  the house and surrender them to a local police department

4  immediately, and he's going to start working on that.  And

09:50  5  we're in contact with Probation, and I think Probation has

6  given us 48 hours, but we intend to do it well before then.

7  THE COURT:  Okay.  So the defendant is voluntarily

8  surrendering the firearms or defendant's husband is voluntarily

9  placing them with a local police department as part of this

09:50 10  package agreement; is that the gist of this?

11  MR. VIEN:  Yes, Your Honor.  And if for some reason

12  the local police department won't accept them, then I have

13  another method to have another person with a license to carry

14  firearms take possession of the firearms.

09:50 15  THE COURT:  Okay.  So this is acceptable to defendant,

16  then, too.  Should this be a condition?

17  U.S. PROBATION:  If I may, Your Honor, we do have a

18  few more conditions that may potentially have been agreed upon.

19  And I do have some more for the --

09:50 20  THE COURT:  Okay.

21  U.S. PROBATION:  -- firearm condition as well.

22  THE COURT:  Okay.

23  MR. VIEN:  And we don't object to it being a

24  condition, Your Honor.

09:50 25  THE COURT:  All right.  So Ms. Dumoulin, we will add

1    no firearms in the residence as a condition.  What are the

2    other conditions?

3              U.S. PROBATION:  Yes, Your Honor.  The firearms would

4    be for the defendant and/or her husband, to remove any firearms

09:51  5    in the residence within 48 hours and to provide verification of

6    that to our office.

7              The additional condition that may have been agreed

8    upon at prior hearings, and counsel and U.S. Attorney, feel

9    free to speak up if they've been taken off the list or if you

09:51 10    are in disagreement.  Defendant's husband to serve as a

11    third-party custodian; is that still something that the parties

12    are agreeable to or recommending or requiring?

13              MR. VIEN:  The only thing -- we are willing to do

14    that, Your Honor.  The only problem is he has a job.  He goes

09:51 15    out and works during the day, so I don't know if --

16              THE COURT:  I'm not inclined to order that where we've

17    got GPS monitoring and essentially what amounts to not just

18    home confinement but home incarceration.  I think -- I think it

19    makes sense not to put the defendant's husband in a position of

09:52 20    not being able to work.

21              U.S. PROBATION:  Thank you, Your Honor.  Just a couple

22    of standard conditions.  To report to Pretrial Services as

23    directed and to report any contact with law enforcement within

24    24 hours.  And lastly, that she be required to pay for the

09:52 25    location monitoring throughout this.

1          THE COURT:  Any reason why I should -- I mean, I

2     believe the report is directed as a necessary statutory

3     condition and likewise law enforcement report.  Any reason why

4     I shouldn't order each of those, Mr. Vien?

09:52  5          MR. VIEN:  No, Your Honor.  Excuse my ignorance

6     regarding the location monitoring.  I think at a prior hearing

7     the Probation Office asked for it to be what type of location

8     monitoring to be at the discretion of the Probation Office

9     because they don't know exactly what equipment is available.

09:53  10    We don't object to that.  But I don't know if there's equipment

11    that is not considered to be GPS, and I know we've been saying

12    GPS throughout the hearing.  And I just wanted to make sure

13    that Probation has the flexibility to use whatever location

14    monitoring equipment that they have and deemed appropriate.

09:53  15         THE COURT:  That is a very good point.  I've been

16    using the term "GPS" loosely, but I know there's limited

17    numbers of the different kinds of units.  And I will defer to

18    the discretion of the Probation Office as to what type of

19    location monitoring to use.

09:53  20         So I will actually ask Ms. Dumoulin, I think we may

21    need to correct it in the conditions to say location monitoring

22    rather than GPS monitoring, and location monitoring as directed

23    by the Probation Office.  That's a helpful correction.  Thank

24    you.

09:54  25         Anything else, Counsel?  There's a lot of moving parts

1    here, and I'm grateful for correction or input on any piece of

2    this.

3              MR. VIEN:  Nothing from the defense, Your Honor.

4              MS. HEMANI:  Nothing from the government, Your Honor.

09:54  5              THE COURT:  Okay.  Probation?

6              U.S. PROBATION:  No.  Thank you, Your Honor.

7              THE COURT:  Thank you all, and we will stand in

8    recess.

9              THE CLERK:  All rise.  We are now in recess.

09:54  10              (Recording ends at 2:53:21)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3              I, Linda Walsh, Registered Professional Reporter

4     and Certified Realtime Reporter, in and for the United States

5     District Court for the District of Massachusetts, do hereby

6     certify that the foregoing transcript is a true and correct

7     transcript of the audio-recorded proceedings held in

8     the above-entitled matter, to the best of my skill and ability.

9              Dated this 13th day of June, 2023.

10

11

12

13                    /s/ Linda Walsh_____

14                    Linda Walsh, RPR, CRR

15                    Official Court Reporter

16

17

18

19

20

21

22

23

24

25