```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


                                )
UNITED STATES OF AMERICA,       )
                                )         Criminal Action
          Plaintiff,            )         No. 21-10035-ADB
                                )
v.                              )
                                )
FAITH NEWTON,                   )
                                )
          Defendant.            )
                                )



                      CHARGE CONFERENCE

          BEFORE THE HONORABLE ALLISON D. BURROUGHS
               UNITED STATES DISTRICT JUDGE

                      July 6, 2023
                       8:30 a.m.



           John J. Moakley United States Courthouse
                    Courtroom No. 17
                    One Courthouse Way
             Boston, Massachusetts  02210




                           Kelly Mortellite, RMR, CRR
                           Official Court Reporter
                           One Courthouse Way, Room 3200
                           Boston, Massachusetts  02210
                           mortellite@gmail.com
```

1    APPEARANCES:

2    On Behalf of the Government:
     William B. Brady
3    Christopher R. Looney
     United States Attorney's Office MA
4    1 Courthouse Way
     Suite 9200
5    Boston, MA 02210
     617-748-3287
6    william.brady@usdoj.gov
     christopher.looney@usdoj.gov
7
     On Behalf of the Defendant:
8    George W. Vien
     Michelle R. Pascucci
9    Nathaniel R. B. Koslof
     Donnelly, Conroy & Gelhaar, LLP
10   260 Franklin Street
     Boston, MA 02110
11   617-720-2880
     Fax: 617-720-3554
12   gwv@dcglaw.com
     mrp@dcglaw.com
13   nrbk@dcglaw.com

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  P R O C E E D I N G S

 2            (The following proceedings were held in open court

 3   before the Honorable Allison D. Burroughs, United States

 4   District Judge, United States District Court, District of

 5   Massachusetts, at the John J. Moakley United States Courthouse,

 6   One Courthouse Way, Courtroom 17, Boston, Massachusetts, on

 7   July 6, 2023.)

 8            MR. BRADY:  Good morning, Your Honor.  Bill Brady for

 9   the United States.  I know we are here this morning for the

10   charge conference.  There is one matter that we wanted to bring

11   to the court's attention.  We just mentioned this to the

12   defense as well, and we just wanted to start there.

13            MR. LOONEY:  Yeah.  So yesterday, you recall the

14   government put on Dr. Anthony Eaton.  We provided reports from

15   our investigation about him.  During a debrief session last

16   night, we were informed that he is or had at some point been

17   the subject of a separate investigation by the Drug Enforcement

18   Agency regarding whether he illicitly distributed prescribed

19   narcotics, whether he ran a pill mill, essentially.

20            That was the first I became aware of it or Mr. Brady

21   became aware of it.  We are in the process of obtaining

22   information concerning it.  We've informed Mr. Vien.  We are

23   and we will provide whatever information we get, we learn, to

24   Mr. Vien about this as promptly as we can.  We are hopeful that

25   it doesn't derail the schedule, but we'll do whatever we can,
```

 1   whatever we need to do to address this.

 2          MR. VIEN:  Could I just give you my position on it?  I

 3   don't know why they're so sensitive about allegations of

 4   misconduct, but I'm not making any.  I believe that they did

 5   everything appropriate, and they were as surprised by this, and

 6   they did their due diligence, and things happen and it came out

 7   after the fact.  So let me say that first.

 8          MR. LOONEY:  I appreciate that.

 9          MR. BRADY:  Thank you.

08:32 10       THE COURT:  They are very sensitive about it.

11          MR. VIEN:  They are very sensitive about it.

12          MR. BRADY:  It's a big deal to us.  I appreciate that,

13   Mr. Vien.

14          MR. VIEN:  When you don't have a career or future,

15   things don't bother you as much.  That's my perspective on it.

16          THE COURT:  My perspective is you just had to be

17   thicker-skinned about it 20 years ago than people are now.

18          MR. VIEN:  You know, I was going to say that.  It was

19   a different world where it was commonplace.  But anyway, I

08:33 20   think they're getting more information.  They're going to

21   provide us with the information when they get it, and then we

22   can figure out what to do at that point.  I think it's too

23   early to suggest a course, and maybe we -- I don't want to say

24   "respectfully."  Maybe we just continue on our schedule and we

25   can figure out later in the day what we should do, if anything

1   else.

2          THE COURT:  I mean, that makes sense to me.  It seems

3   to me that there's almost nothing that an instruction to the

4   jury can't solve.  So I have to go back through the testimony.

5   But was he actually untruthful on the stand yesterday about

6   anything or just wasn't asked?

7          MR. LOONEY:  He was not asked about it.

8          THE COURT:  Okay.

9          MR. VIEN:  That's my memory, Your Honor.

08:33 10          THE COURT:  Okay.  Did Jamie know about it?

11          MR. BRADY:  I would imagine so.

12          MR. LOONEY:  Actually, I do not know.  He has never

13   discussed or described it to me.

14          THE COURT:  That might have been something he could

15   have mentioned.

16          MR. LOONEY:  I don't know if he knows that.  I don't

17   know the progress of that investigation.

18          THE COURT:  All right.  Let's go to work on the jury

19   instructions.  I have the defendant's submission from last

08:34 20   night.  Let's just run through that first because it's in

21   writing, and I can work on it from the bench this morning.

22          MR. BRADY:  I'm not sure --

23          MS. PASCUCCI:  It was midday yesterday.

24          MR. BRADY:  We're trying, Your Honor.  We're trying,

25   Your Honor.

```
 1              MR. VIEN:  It's right here, right.

 2              MR. BRADY:  You all have a copy?  That is so weird.

 3    I'm not sure -- I think between the two of us we must have

 4    missed the ECF.

 5              THE COURT:  I didn't see it until this morning.  I

 6    don't know what time it got filed last night.

 7              MR. BRADY:  Usually when one of us screws up the other

 8    one catches it.

 9              THE COURT:  So far today I've made four breakfasts,

08:35 10    four lunches, dealt with the tree guy, and read the jury

11    instructions.

12              MR. BRADY:  What have we done?

13              THE COURT:  It was the tree guy that threw me off.  I

14    don't know what he was doing at my house this morning.  I've

15    had no coffee as a result of the tree guy, I will say that.

16    Let's just go, let's go through it.

17              MR. BRADY:  Maybe we can figure it out, Your Honor.

18              THE COURT:  Let me go through this generally.  They

19    are first asking for a different cooperating witness

08:35 20    instruction.  I think that they want their own language, but I

21    think they mostly want the name of the cooperating witness

22    referenced.  So I will go through and make some changes to

23    that.  I'll redline it.  I'll add the specific name of the

24    cooperating witness.  There's only been one.  But I'm not going

25    to give the instruction wholesale.  So you can take a look at
```

```
 1    the next version and see what you think.

 2            MR. BRADY:  Okay, Your Honor.

 3            THE COURT:  The second one is, they want an

 4    instruction about the sentencing guidelines given the testimony

 5    about Winnie Waruru's plea agreement.  So I think on the

 6    instruction about punishment, I will add something about how

 7    punishment is individually determined, and maybe -- I'm not

 8    giving anything nearly this long, but I will reference the

 9    sentencing guidelines for them, and you can take a look at that

10    as well.

11            I already made -- the third one is the regulatory

12    instruction, and I already made those edits.  I don't think I

13    added anything.  Are you talking about just the -- are you

14    talking specifically about the overt act instruction?

15            MS. PASCUCCI:  No, Your Honor.  Just to clarify, this

16    was filed midday while we were at trial yesterday by our

17    associate in the office, so this wasn't responding to the jury

18    instructions that were circulated yesterday evening.  I think

19    the health care, we still have some issues with as to the

20    unanimousness language, but I think point three, we're fine on

21    that point.

22            THE COURT:  Okay.  I really didn't know what that one

23    was talking about.  As I said, I had something much weaker.

24    They agreed to yours and I put it in.

25            MR. BRADY:  We blew it, Your Honor.
```

1        THE COURT:  You didn't blow it.  It's perfectly

2   accurate each way.  I try to be -- these are always long.  I

3   just try and be short because I think if we have any hope of

4   the jury actually understanding at all that briefer is better.

5   I'm telling you, I go back to the jury room after these things,

6   and these copies of the instructions are dog-eared.  They spend

7   a lot of time with them.  It's just a matter of trying to be

8   succinct.

9        And their last thing is, which is the only one that's

08:38  10   sort of meaty enough to warrant instruction at this point is

11   that they don't like your unanimity instruction or your anti-

12   unanimity instruction on whether or not they have to be

13   unanimous on about the different types of fraud.

14        MR. BRADY:  I think, Your Honor, we submitted law on

15   this, which I think the court had the benefit of seeing in

16   crafting the instruction in the draft, and we think that's

17   consistent with what the law is in the circuit.

18        THE COURT:  Okay.  I'll take a look at that one while

19   we're going as well.  So those are in writing.  They're easier

08:38  20   to deal with.  I'll circulate a redline later.  What else?

21        MR. VIEN:  I think we have a money laundering issue

22   about commingling of funds.  And what it is is the language in

23   1956 is different from the language in 1957.  Where in 1957 --

24   1956 says involving, you know, proceeds of specified --

25   transaction involving proceeds is specified unlawful activity

```
 1    while 1957 doesn't say involving.  It says with proceeds
 2    specified in unlawful activity.  So we need -- and if there's
 3    going to be a commingled funds issue, then I would ask for an
 4    instruction that says you have to have enough basically dirty
 5    money.
 6            THE COURT:  Right, I understand.  So I saw your
 7    initial instruction on that.  I didn't put it in because I
 8    don't know what the evidence is.  Are we talking about a
 9    commingled account?  I didn't know what we were talking about.
10    It's a complicated instruction that you only need under certain
11    circumstances, and I wasn't sure if those circumstances
12    existed.
13            MR. VIEN:  I have just -- and I don't mean to be
14    presumptuous.  We wrote some language on this issue.  I don't
15    know if it's helpful to the court or if it isn't helpful, but
16    I'll put it on Karen's desk.
17            THE COURT:  Can you just walk it here?
18            MR. VIEN:  I would prefer to walk it up.
19            THE COURT:  I'm not going to touch to you.  Pass the
20    piece of paper.
21            MR. VIEN:  Honestly, I'm not worried about you.  It's
22    Mr. Brady.
23            MR. BRADY:  I read the transcript from yesterday in
24    horror.  You would think from the transcript I put Mr. Vien in
25    a headlock at sidebar.
```

```
 1              THE COURT:  That's not what you think if you read the
 2    transcript.  You fondled him inappropriately is what you would
 3    think if you read the transcript.
 4              MR. BRADY:  That's probably worse, Your Honor.  I will
 5    stop talking.
 6              THE COURT:  It probably is.  Just don't touch him.  I
 7    know that George has an array of issues.  This is a new one for
 8    me.
 9              MR. BRADY:  I've learned a lot in this trial, Your
10    Honor.
11              THE COURT:  Is this basically the same instruction as
12    in your proposed charge, or is this something different?
13              MR. VIEN:  It's pretty close, Your Honor.
14              THE COURT:  So it's the same idea.
15              MR. VIEN:  On the unanimity issue, I also have some
16    language in a case that says you can instruct, if you want to.
17    The government is right, you don't have to.  But you can if you
18    want to.  And I'll just hand that up as well.
19              THE COURT:  All right.  To the government, one of you,
20    what's the deal on the bank accounts?  Is that going to be an
21    issue?
22              MR. LOONEY:  What we expect the evidence to show, they
23    received or the Arbor bank accounts received 160-odd million
24    dollars in proceeds from MassHealth.  100 million of that came
25    from home health aides.  We believe all of that is proceeds of
```

08:40 (line 10)

08:41 (line 20)

1    unlawful activity because none of them were trained and

2    certified and qualified.  And Ms. Dossa testified those would

3    not have been paid out if MassHealth had known that.  That

4    constitutes the two-thirds majority of the amounts.

5          The rest is tainted in a way that we can't quantify

6    them by services that weren't rendered, kickbacks, all the

7    other issues.  So the vast majority of the funds in the Arbor

8    accounts were tainted, and that's all, what we will then show

9    that flows into Ms. Newton's accounts and is used for specified

08:42 10    transactions.

11          So we believe we will, reading this briefly, we will

12    satisfy this rule that, where it was commingled funds, we need

13    to show that the amount of the tainted funds exceeds the

14    non-tainted funds, comfortably.

15          THE COURT:  You're not objecting to the instruction

16    then.

17          MR. LOONEY:  I think it makes it so complex that it

18    may be unnecessary, and I have not focused on this instruction

19    issue.

08:42 20          THE COURT:  I'm going to put something in then because

21    you're talking about a commingled account.

22          MR. LOONEY:  It all comes from Arbor.  It's all

23    proceeds of the business, but there is some sense that there is

24    untainted money in there.

25          THE COURT:  If there's some legitimate money in there,

1    it's a commingled account.  Look, for me, jury instructions,

2    there are three things, right, or two things.  I want to

3    instruct the jury in a way that they can understand it, and I

4    want to make sure we don't do this again over a reasonably

5    requested charge from either side that I don't include.

6        MR. LOONEY:  Understood.

7        THE COURT:  There's no place easier to get overturned

8    than on a jury charge.  Bill Young once told me I only have to

9    get three out of five evidentiary rulings, right, so I do the

08:43 10  best I can on those, but jury instructions are something where

11   you really have a chance to think about it.  And I work hard

12   both to get them right and to cover all of our butts.  So I'm

13   going to put in something on the commingling on the

14   butt-covering theory --

15       MR. LOONEY:  Thank you.

16       THE COURT:  -- clearly and easily communicating a lot

17   of the jury that's going in.  I'll try and do it clearly, and

18   I'll show you another draft.  So hopefully at lunch I'll give

19   you another draft.

08:44 20      MR. LOONEY:  Thank you.

21       THE COURT:  What else?

22       MR. VIEN:  I have a few small issues.  I might be

23   working off an earlier version.

24       THE COURT:  I have a hard copy and the one on the

25   screen.  Why don't you give me the name of the charge that it's

1    on, and we'll work on it that way.

2             MR. VIEN:  This is under Presumption of Innocence;

3    Proof Beyond a Reasonable Doubt, and it's the last paragraph.

4             THE COURT:  Yes.

5             MR. VIEN:  The last sentence says, "On the other hand,

6    if after fair and fair and impartial consideration of all the

7    evidence, you are satisfied beyond a reasonable doubt as to her

8    guilt, you should vote to convict her."  I'd ask you to change

9    "should" to "may."  I think it's getting too close to directing

08:44 10   the --

11            THE COURT:  Isn't that right out of the Pattern?

12            MR. VIEN:  It may be.  I think it's wrong.  And I know

13   what the Pattern may or may not say, but I still have to object

14   to it because I think it gets too involved in the jury's

15   province.

16            THE COURT:  If they find after fair and impartial

17   consideration of all the evidence they're satisfied beyond a

18   reasonable doubt, under what circumstances should they not

19   convict her?

08:45 20            MR. VIEN:  Because that's up to the jury to ultimately

21   convict.  And I know we always say, you know, you can't argue

22   jury nullification and you're not supposed to talk about it and

23   we don't.  But it's up to the jury whether or not to choose to

24   convict or not, and I think we're invading their province by

25   the word "should."

1           THE COURT:  You want "It's your duty to convict her,"

2    just like a parallel construction?

3           MR. VIEN:  No.  Too strong.  It's a different

4    situation between convicting people and acquitting people.

5    That's not parallel, obviously.

6           THE COURT:  I'll look at it but I think I'm going to

7    leave that one.  I think that's a very -- I think you're

8    banking on a jury nullification argument, and it's not proper.

9           MR. VIEN:  As long as we don't argue jury

08:46 10   nullification, I think the jury can decide not to convict if

11   they don't want to convict.

12          THE COURT:  I'll think about it, but I think I'm going

13   to leave that one.  Next.

14          MR. VIEN:  I had under Cooperating Witness, I don't

15   know.  Should we make it plural because of Dr. Eaton?

16          THE COURT:  I had it plural and I changed it because I

17   thought she was the only one.  But if you want, I'm happy to

18   put in both.  But then I need to make adjustments to the one

19   you passed up.

08:46 20          MR. BRADY:  Your Honor, just on that one, you know, if

21   Eaton had immunity or had a cooperation agreement or anything

22   like that, then it might be appropriate.  But it might just be

23   confusing, I think, to lump them in with someone like Winnie

24   Waruru, who clearly, she's clearly a cooperating witness here.

25          THE COURT:  Well, he had a proffer letter, right?

1          MR. BRADY:  Yes.

2          THE COURT:  Did he say nobody made any promises to him

3     about whether or not he was going to be prosecuted?

4          MR. BRADY:  Yeah, and there was some extended back and

5     forth about that.  It was pretty clear about that.

6          MR. VIEN:  I thought he said "I don't know if they're

7     going to prosecute me or not."

8          THE COURT:  But he said no one had promised him he

9     wouldn't be, right?

08:47 10          MR. LOONEY:  Correct.

11          MR. VIEN:  Something to that effect.

12          THE COURT:  Yeah.  All right?  I'll do something with

13     that one, too.  I think that's fair.

14          MR. VIEN:  And I may have just missed a version.  The

15     version I'm using, it says "Use of sound recordings and

16     transcripts."

17          THE COURT:  I took that out.

18          MR. VIEN:  You took that out.

19          MR. BRADY:  Can I make a suggestion?  Whatever is

08:48 20     easier for the court, I flagged a couple of minor things.  I

21     don't know if it's easier for the court to kind of go by pages

22     as we go through.

23          THE COURT:  You can.  I don't really care.

24          MR. BRADY:  Or do you want to hear from the defense

25     and then hear from us?  Whatever is easier.

1          MR. VIEN:  I do enjoy Mr. Brady talking over me all

2    the time.  Why don't I just go through mine.

3          MR. BRADY:  That's fine.  I will sit down.  No

4    touching.

5          MR. VIEN:  And on health care fraud on Count 2, I just

6    wanted to make reference to the indictment, to the charge

7    that's alleged in the indictment.  Obviously I don't want them

8    convicting on some other health care fraud because there are a

9    few issues that we want to raise, not to the court but to the

08:48 10   jury, about the way Count 2 is charged.

11          So throughout the conspiracy and the other charges, I

12   just wanted more specificity of saying the health care fraud

13   charged in the indictment.  So I don't know if you can cure

14   that one on that page or not.

15          THE COURT:  I'll take a look at that, too.  What are

16   your thoughts on the indictment going back with the jury?

17          MR. LOONEY:  We'll need very redacted copy.

18          THE COURT:  Very redacted.  Yes.  It's not going to be

19   a speaking thing that goes back to them.

08:49 20   MR. VIEN:  We'll just have to see the redactions, Your

21   Honor.

22          THE COURT:  Okay.

23          MR. LOONEY:  If we can go back to the means and manner

24   and unanimity instruction, we don't want the jury thinking they

25   need to find and agree on each of the means and manner because

```
 1   that's not what the law is.  They just need to find the

 2   elements are satisfied.  There's some tension there.

 3            MR. VIEN:  The next thing, excuse me, on money

 4   laundering, that relates to the argument we made earlier about

 5   commingling of funds.

 6            THE COURT:  Yeah, I got that one.

 7            MR. VIEN:  And it looks like there was a standalone

 8   willful blindness.

 9            THE COURT:  I took it out.  I had that as like a

10   placeholder for what we were going to --

11            MR. VIEN:  Do you have anything else?

12            If we didn't make it clear, on a unanimity argument,

13   it also extends to whether or not the defendant was a principal

14   aider or abetter.  So we wanted to say that they have to be

15   unanimous on whether she was a principal or aider and abetter

16   on Count 2.

17            THE COURT:  I don't think they do.  Do you think they

18   need to be unanimous on that?

19            MR. VIEN:  I think they do, yeah.  Yes, excuse me.

20            THE COURT:  Where does that come from?

21            MR. VIEN:  I don't have a case, Your Honor.

22            THE COURT:  I just don't think that's right.

23            MR. VIEN:  It may not be.  I just wanted to raise it

24   and ask for it.

25            THE COURT:  You want it anyway.  What's the
```

1   government's view on that?  I mean, really that's just whether

2   or not we add a separate question to the verdict form, which we

3   haven't done.  What's the government's view?

4        MR. BRADY:  Yes, I think on this, Your Honor, I think

5   kind of simple is better.  I think if we start adding in more

6   on aiding and abetting, I worry that the jury might start to

7   get confused about that.

8        THE COURT:  I think it's a problem because there can

9   be, like, they've alleged a whole lot of different kinds of

08:51 10  fraud, right?  I mean, they could think that she aided and

11  abetted some of them and she was the principal on others of

12  them, and I'm not sure how we parse any of them out.  And I

13  don't think the law requires it to be unanimous as between the

14  two.

15       MR. LOONEY:  Don't have much in the law, but what

16  Mr. Vien says, that the court may instruct the jury that it

17  does not need to be unanimous -- principal or abetter.  So

18  having two questions, one or the other, would suggest unanimity

19  where it's not actually required.

08:52 20       THE COURT:  Right.

21       MR. VIEN:  Obviously that's where the law is right

22  now, Your Honor.  Obviously we're going to be straightforward

23  with the court about what the law is, but we think the law

24  should be different and ask you to instruct on that.

25       THE COURT:  I mean, yeah, I'm not going to change

1   that.  But I mean, he's obviously going to raise an issue here.

2   I don't know that there's anything to this issue or not, but do

3   you want to drop the aiding and abetting theory?  I just think

4   you're -- that's not really your case.

5        MR. BRADY:  It's not, Your Honor.  So I had a thought

6   on that.  If you give me a moment, let me just flip to the

7   instruction so I have it in front of me.

8        THE COURT:  You're going to the Aiding and Abetting

9   instruction?

08:53 10        MR. BRADY:  Yeah.  It's page 27 of my draft, Count 2,

11   Health Care Fraud, Aiding and Abetting.

12        THE COURT:  It's 26 now, but okay.

13        MR. BRADY:  So my concern, Your Honor, is one of jury

14   confusion here.  We understand that aiding and abetting --

15   there's just one line on the verdict form, right, health care

16   fraud.  And you can be liable as a principal on that or another

17   way that the defendant can be guilty is through aiding and

18   abetting.  It's like an either/or.

19        My concern is, I just don't want the jury thinking

08:54 20   like it's just another set of elements, another thing they need

21   to decide.  In other words, would it make sense to say that

22   something in here along the lines of, "If you find based on my

23   instructions that the defendant is guilty of health care fraud

24   as a principal, then your verdict on Count 2 should be guilty,

25   and there's no need to consider aiding and abetting."  Because

1    I think that's how it works, right?  I mean, if they determine

2    that, then there's no need for them to consider the aiding and

3    abetting theory.

4             THE COURT:  Well, I'll put it in so it's an

5    alternative thing, but I'm not going to do that.

6             MR. BRADY:  Okay.  I think that's really kind of just

7    to make it clear to them that it's just an alternative to get

8    to the same question.

9             THE COURT:  I'm going to muck around with the last

08:55 10    sentence of that charge, but I don't think I'm going to -- I

11    think I'm going to really get to the heart of what Mr. Vien is

12    looking for.

13             MR. BRADY:  Your Honor, if I may tick through a couple

14    of other minor things --

15             THE COURT:  Yes.

16             MR. BRADY:  -- which you may have already caught.  The

17    Law Enforcement Witnesses instruction, which in the draft I

18    have is page 16.

19             THE COURT:  Yeah, I have it.  Were there any former

08:55 20    law enforcement officers?

21             MR. BRADY:  That was the point.  There aren't.  I

22    think our two law enforcement people are both currents, so I

23    think we can get rid of "former" and the references to "or may

24    have been," current or former.

25             THE COURT:  Okay.

1        MR. BRADY:  Okay.  The Sound Recordings and

2   Transcripts, you already talked about that.

3        THE COURT:  That's out.

4        MR. BRADY:  That's out.  In the instruction with the

5   heading, The Indictment, which I have on page 18, just in Count

6   2 of the indictment she's charged with committing and aiding

7   and abetting.  I think there's just a typo in "aiding" in my

8   draft.

9        THE COURT:  Right, got it.  I'm not sure I want to

08:56 10  jump into this at this late date, but I charged it this way

11  because it's how you both proposed it, but we could also flip

12  the substantive and that conspiracies.

13       MR. BRADY:  I think at this stage it's probably in

14  everybody's best interest just to leave it.

15       THE COURT:  I usually do it the other way, but since

16  you both requested it the same way, I did it the way you wanted

17  it.

18       MR. BRADY:  I would say that's not necessary at this

19  point.

08:57 20       In the instruction, so Count 1, Conspiracy to Commit

21  Health Care Fraud - Elements of the Offense.  It starts on page

22  20 of my draft.  And on the second page of that one, it's the

23  second paragraph up from the bottom.  It begins, "The

24  government does not have to prove that the conspiracy succeeded

25  or was achieved."

 1          THE COURT:  You want the "overt act" out?

 2          MR. BRADY:  Yes, there's a reference to that at the

 3   end.

 4          THE COURT:  Yeah.

 5          MR. BRADY:  Then in the next paragraph, Your Honor,

 6   where it describes what the indictment alleges.  There is at

 7   the end of the first sentence, "Fraudulent statements in

 8   connection with health care benefits to obtain payments from

 9   Medicare and MassHealth."  Our focus in the trial has been on

10   MassHealth.  We haven't --

11          THE COURT:  I'll just say "from MassHealth."  That

12   just came from the defendant's instruction.  That's how they

13   asked, but you're right, there hasn't been testimony about

14   Medicare.  It's just going to say "MassHealth."

15          MR. BRADY:  The next comment I had, Your Honor, is in

16   the instruction for Count 2, Health Care Fraud.  My draft that

17   starts on page 23.

18          THE COURT:  Yes, I have it.

19          MR. BRADY:  And the note I had was on the next page,

20   page 24.  It's the paragraph that begins, "A material fact or

21   matter is one that has a natural tendency."

22          THE COURT:  Yeah.

23          MR. BRADY:  So the third sentence in there that begins

24   "Again."

25          THE COURT:  Yes.

1          MR. BRADY:  I think, Your Honor, this is in some

2    version, whether it was defense or government's, there was a

3    reference to the regulatory instruction that was before this,

4    but now the sequence has changed.  So I think if we get rid of

5    "again" and start with "A," I think that does the trick.

6          THE COURT:  That's fine.

7          MR. BRADY:  Then it's on page 26 in my draft, but it's

8    the last page of that same instruction, Your Honor.

9          THE COURT:  Yes.

08:59 10          MR. BRADY:  In the second to last paragraph there.

11          THE COURT:  Yes.

12          MR. BRADY:  There's another reference to, "A violation

13    of any of these rules and regulations is not a crime in and of

14    itself and is not determinative of the defendant's guilt or

15    innocence."

16          THE COURT:  Right.

17          MR. BRADY:  So on that, I would suggest the following

18    tweak just to make it parallel to what was said before about

19    the same issue.

09:00 20          THE COURT:  This was my original instruction on it,

21    and I think something along the lines of "However, false

22    representations regarding compliance with these regulations can

23    be the basis for a guilty finding if this and all the other

24    elements of the charge to the offense are established beyond a

25    reasonable doubt."

1    Tell me where you're making a change.  I have the

2    paragraph.  I just don't know where you're inserting it.

3        MR. BRADY:  So we've got the sentence that begins, "A

4    violation of any of these rules and regulations."

5        THE COURT:  Yes.

6        MR. BRADY:  So I think after that sentence, Your

7    Honor, it would make sense to add something like, "However,

8    false representations regarding compliance with these

9    regulations can be the basis for a guilty finding."

09:01 10        THE COURT:  Hold on.  "False representations regarding

11    compliance with" --

12        MR. BRADY:  -- "with these rules and regulations can

13    be the basis of a guilty finding if this and all the other

14    elements of the charged offense are established by the

15    government beyond a reasonable doubt."  I think that tracks

16    what you have earlier in that same instruction, Your Honor.

17        MR. VIEN:  I think that implies that a violation of

18    the reg is an element of the offense, which I don't think it

19    is.

09:01 20        THE COURT:  I'll take a look at it.  I understand both

21    points.

22        MR. BRADY:  Then one last point in the next sentence.

23        THE COURT:  I have statuses at 9:00 and 9:15.  So if

24    you can do this in 30 seconds or less.

25        MR. BRADY:  Maybe just, it's on this one page right

1    here.  The next sentence after that says, "The fact that

2    certain civil rules and regulations have been violated may only

3    be used by you to assist you."  I think instead of "only," that

4    should say "also" because they can be used in that other way

5    that we just added in.

6                THE COURT:  I'll take a look at that instruction.

7                MR. BRADY:  Thank you, Your Honor.

8                MR. VIEN:  Back at 10:00, Your Honor?

9                THE COURT:  Yes.  If this is everything, you don't

09:02 10    have to come back until 10:00.

11                MR. BRADY:  I had just a few other things.  It might

12    take five, ten minutes just to tick through the other ones.  Or

13    I'm happy to share them with you.

14                THE COURT:  Then you have to come back.  I already

15    have these people waiting.

16                THE COURT:  Come back at 9:30 if you want to go

17    through the others.

18                (Recess, 9:03 a.m. - 9:40 a.m.)

19                THE COURT:  So is it Eaton?  What is his name?

09:03 20                MR. LOONEY:  Eaton.

21                THE COURT:  Is it fair to say that he may have

22    participated in the crime?

23                MR. BRADY:  Yeah, I think so.

24                THE COURT:  I'll say "a crime."  It's a different

25    crime.

1          MR. BRADY:  Are you ready to tick through?

2          MR. VIEN:  Sure.

3          MR. BRADY:  Your Honor, whenever you're ready.

4          THE COURT:  Let's go.

5          MR. BRADY:  Okay.  Just a few small things.  Count 7,

6    Money Laundering Conspiracy.

7          THE COURT:  Hold on.

8          MR. BRADY:  In the third sentence that begins with,

9    "As with Count 1, the government must prove the existence."

09:40 10          THE COURT:  Yes.

11          MR. BRADY:  After the comma there, I think we want to

12   add in something like "and must prove."  So it will read, "The

13   government must prove the existence."

14          THE COURT:  "Must prove both of these things beyond a

15   reasonable doubt."

16          MR. BRADY:  Yes, I think that was missing there.

17          THE COURT:  Okay.

18          MR. BRADY:  And then Counts 8 through 10, Money

19   Laundering, which in my draft is on the next page.

09:41 20          THE COURT:  Yes.

21          MR. BRADY:  In the first paragraph, in the second

22   sentence, I think there's just a typo.  "Each of these three

23   counts."

24          THE COURT:  Isn't that what it says?

25          MR. BRADY:  It may just be the earlier draft, Your

 1    Honor.  I think there was -- it said, "Each of these three

 2    counts."  In my draft it says, "Each O these three counts."

 3              THE COURT:  That's been fixed.

 4              MR. BRADY:  Okay.  And then just another one, at the

 5    bottom of the page in my draft it's the paragraph that begins,

 6    "The government does not have to prove that the defendant."

 7              THE COURT:  Yeah.

 8              MR. BRADY:  I think at the end of that sentence in my

 9    draft where it says, "defendant committed either of these

09:42 10    offenses."

11              THE COURT:  Yeah, thank you.  That one we'll get.

12              MR. VIEN:  Is that it?

13              MR. BRADY:  If I may have just a moment.  I think

14    that's it.

15              THE COURT:  We'll have one more round, so if you

16    missed one, that's --

17              MR. BRADY:  I think that's all for that, Your Honor.

18              THE COURT:  Mr. Vien, do you have something else?

19              MR. VIEN:  No, Your Honor.

09:42 20              THE COURT:  All right.  I'm going to work on these.

21              When you're looking at the next draft, because I may

22    pass it out to you during testimony, I'm redlining what I do

23    today.  I think other than that, we've taken out recordings.

24    We took out the extra willful blindness instruction, which is

25    like a placeholder for me to remember it.  And the things that

1    we may have added, I added versions of the things that the

2    government asked for yesterday or the day before.  So those may

3    be all redlined today, but just make sure you go back and check

4    those.  One was about unanimity and one was about -- what was

5    the other one?

6            MR. BRADY:  Regulatory rules.

7            THE COURT:  So if you do a word search on "regulatory"

8    and "unanimity," you should catch everything.

9            MR. BRADY:  Could I raise one other brief thing, Your

09:43 10   Honor, relating to the testimony of Special Agent Wisnaskas,

11   which we're going to pick up with.

12            So yesterday the defense gave us a series of text

13   messages which we marked as an exhibit and introduced.  And as

14   I flipped through -- and we haven't objected.  It's in

15   evidence, Your Honor.  But as I flip through some of these, it

16   looks like some of these, the only relevance of them that I can

17   discern is that they relate to other home health companies and

18   they were getting in trouble and what they were up to.  And I

19   think there are also messages where it's again the only

09:44 20   relevance seems to be the defendant thought, well, maybe

21   MassHealth would ask for the money back; we just have to

22   reimburse it.

23            And I know, Your Honor, we moved on that beforehand

24   and we've had some discussion about that before.  I just sort

25   of flag that as a concern.  Again, it's in evidence, they're

1  going to see that.  But just in case, not knowing exactly where

2  the defense intends to go with that, I just want to just sort

3  of note that as something that I see in these messages and is a

4  concern.

5          THE COURT:  Okay.  Like a motion?

6          MR. BRADY:  It's not a motion, Your Honor.  Just, if

7  there's objections, hopefully by mentioning it now --

8          THE COURT:  Like when you have circle time and

9  everybody gets to share something.

09:44 10         MR. VIEN:  He has concerns.  He wants to share things.

11 He's very sensitive about stuff.  I just let him talk when he

12 gets like this.  Just let him vent.

13         MR. BRADY:  My hope, Your Honor, is circle time here

14 can save us circle time over there.  That's the reason why I

15 mention it.

16         MS. PASCUCCI:  Your Honor, on that, I'll just note

17 that we have a revised copy of that exhibit to replace the

18 exhibit yesterday because we made a few quick changes, so I'll

19 just pass a copy to the government.

09:45 20         MR. LOONEY:  I also have something to share for circle

21 time.

22         THE COURT:  Yes.

23         MR. LOONEY:  It's two things.  One is the third

24 witness today.  So it will be Mr. Special Agent Wisnaskas,

25 Ashleigh Marrier, then Robert Wyman.  Robert Wyman is one of

1    the attorney witnesses, the one attorney witness who was an

2    attorney for Ms. Newton.  So I just wanted to sensitize the

3    court that he is someone who probably is in possession of

4    privileged communications, and I anticipate I may lead him more

5    than I would otherwise to avoid getting into those.

6            MR. VIEN:  I didn't think he could lead more than he

7    does otherwise, Your Honor, but I appreciate that.

8            MR. LOONEY:  Touche.

9            THE COURT:  Getting back to the witnesses on the stand

09:46 10   and the summary exhibits, we did some research on it last

11    night.  And by "we," I mean the royal we.  And my sense of

12    what's proper for summary charts was pretty on point.  It's not

13    supposed to be any sort of argument.  What the government had

14    on there was sort of in the -- it's probably okay.  It's

15    probably okay the way you submitted it originally.  The gray

16    area is wide.  But I would still feel better if you took out

17    things like "note."  I mean, you could probably leave in

18    "identical" if it's still in there.

19            MR. BRADY:  That's what we did, Your Honor.  We've

09:47 20   redacted out "note" parts so that won't be in the exhibits that

21    we show today.

22            THE COURT:  Okay.  There's other ways to do it.  Like

23    you could have asterisk days, but I think the note thing is

24    problematic.

25            MR. BRADY:  Understood.

1          MR. LOONEY:  Then the one final thing that I have is,

2     we submitted a stipulation that the Bank of America is an FDIC

3     insured institution.  We're hoping that can be read today

4     before our final witness, who is a forensic accountant, Bridget

5     Horn.  Really she's going to be talking about Bank of America.

6          THE COURT:  So that's 416?

7          MR. LOONEY:  Yes.

8          THE COURT:  And do you want me to read it or do one of

9     you want to read it?  I'm happy to read it.

09:48 10          MR. LOONEY:  That would be great.

11          THE COURT:  Something to look forward to.

12          MR. LOONEY:  Thank you.

13          THE COURT:  Will you just let me know when I have it

14     right there.

15          MR. BRADY:  Your Honor, if and when we rest today,

16     Your Honor, just with Petrozziello, do we need to do -- how

17     does Your Honor like to handle that?  Do we need to do anything

18     formal, presumably outside of the presence of the jury, to move

19     to admit or some finding relating to Petrozziello?

09:48 20          THE COURT:  Mr. Vien and Ms. Pascucci are entitled to

21     be heard on that.  Subject to the argument, it seems to me that

22     they linked everything up sufficiently.  The only, you know,

23     kind of issue that comes up in my mind, and there's been no

24     evidence on it yet, is how you're going to parse out like what

25     comes in under each conspiracy.

```
 1              MR. BRADY:  Okay.

 2              THE COURT:  If he's going to make an issue of that,

 3     which I know he alluded to it earlier --

 4              MR. BRADY:  I'm hopeful that, having dismissed the

 5     kickback conspiracy, that issue has fizzled.

 6              THE COURT:  The evidence could be very discrete as to

 7     the two conspiracies.

 8              MR. BRADY:  Could be, Your Honor.  I'm not sure.  I

 9     mean, today we're going to spend a bunch of time talking

09:49 10    through the financial, the evidence relating to the money

11     laundering conspiracy.

12              THE COURT:  I mean, I could -- I mean, we'll see what

13     they want to do with it.  We could give an instruction sort of

14     that -- I mean, are there co-conspirators to the money

15     laundering conspiracy?  Like, who are the co-conspirators on

16     the money laundering conspiracy?

17              MR. BRADY:  For that it's the husband, Ben.

18              THE COURT:  Okay.  So we could say that, we could just

19     come up with, let's see what Mr. Vien wants to do with it.  We

09:50 20    could come up with some kind of instruction to the extent that

21     comes up.  For the money laundering conspiracy I told them that

22     things that other people -- co-conspirator statements -- just

23     say to them that they can only consider statements made by the

24     husband in the money laundering conspiracy and then leave the

25     rest of it, because the other statements shouldn't be relevant
```

1    to the money laundering conspiracy, right?

2        MR. VIEN:  I think it's a mess, Your Honor, and I

3    don't want to fix it for them.

4        THE COURT:  Well, let's give some thought to that.

5    And I don't know -- I have to dump this back on poor Thomas.

6    Can you see if there's any rules on co-conspirator statements

7    with overlapping conspiracies?  Because that may just be an

8    admissibility issue, right?

9        MR. VIEN:  You admitted it all provisionally.

09:51 10        THE COURT:  I mean, once it's in, I mean, the rule may

11    be once it's in, it could be considered for any purpose, right?

12    I don't know.

13        MR. VIEN:  I disagree with that.

14        THE COURT:  I don't know.

15        MR. VIEN:  I think that's the whole Petrozziello

16    situation.

17        MR. BRADY:  The lone co-conspirator for the money

18    laundering is also a co-conspirator for the other conspiracy,

19    for the health care fraud conspiracy.  And so I'm trying to

09:51 20    think about like the statements of co-conspirators that we're

21    seeking to introduce in connection with just the money

22    laundering conspiracy.  All of which is to say, Your Honor, I

23    don't know how much of an issue this is going to end up being.

24        THE COURT:  Let's see what it is.  I don't know; the

25    government keeps charging all these multiple conspiracies.  I

1    mean, this is just my perspective on it.  You don't need the

2    money laundering conspiracy here, right?  Like, either they

3    laundered the money or they didn't, right?  I mean, that's what

4    your argument is, right?  There's no failed money laundering

5    efforts here, right, that they need the conspiracy for.

6        So I know you guys didn't draft the indictment, but

7    these multiple conspiracies create like this crazy problem when

8    you don't really need them if you look at the facts of this

9    case.  I'm just saying.

09:52 10    MR. LOONEY:  I will tell you that there are two

11    reasons for the conspiracy.  One is to avoid a limitation on

12    the admissible evidence as to, you know, there are two discrete

13    or three discrete substantive charges, but we'll be introducing

14    evidence of money laundering beyond that because of the

15    conspiracy.  And then the second is there are forfeiture

16    implications.  That is the reason for that.

17        THE COURT:  Why would there be forfeiture

18    implications?

19        MR. LOONEY:  Because property becomes forfeitable if

09:53 20    it is acquired with funds involved in the offense of money

21    laundering.  And it is a broader -- money laundering is a

22    broader forfeiture predicate than health care fraud.  And so

23    any properties purchased with funds involving money laundering

24    become forfeitable, which is broader than forfeiture available

25    in health care fraud.  I just want you to know that we don't do

1  this with no reason.

2          THE COURT:  The tail wagged the dog.

3          MR. LOONEY:  That may be it.

4          THE COURT:  But anyway, I will see what he comes up

5  with on Petrozziello.  That may keep us from charging on the

6  substantive offenses today.  We may need to work through that.

7  I'm at least going to charge on the first half today if I

8  possibly can.  All right.

9          (Adjourned, 9:52 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                  CERTIFICATE OF OFFICIAL REPORTER

2

3            I, Kelly Mortellite, Registered Merit Reporter

4    and Certified Realtime Reporter, in and for the United States

5    District Court for the District of Massachusetts, do hereby

6    certify that the foregoing transcript is a true and correct

7    transcript of the stenographically reported proceedings held in

8    the above-entitled matter to the best of my skill and ability.

9                  Dated this  6th day of July, 2023.

10

11                 /s/ Kelly Mortellite

12                 _____

13                 Kelly Mortellite, RMR, CRR

14                 Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```